WILLIAMS, J.
| iDefendant, Bryan Insurance Agency, Inc. (“Bryan”), appeals a district court judgment denying its peremptory exception of prescription. Bryan also appeals the court’s grant of a motion for partial summary judgment in favor of plaintiff, Sitaram, Inc., and the denial of Bryan’s *527 motion for summary judgment. For the following reasons, we affirm.
FACTS
Plaintiff, Sitaram, Inc., is the owner of the Best Western Motel in Winnsboro, Louisiana. The motel complex consists of three separate buildings: a 17-unit motel, a restaurant and an office. All three buildings are located at one address: 4198 Front Street, Winnsboro, Louisiana.
In January 2004, plaintiff, through its president/agent, Allen Patel, contacted defendant to inquire about purchasing a standard flood insurance policy (“SFIP”) to cover the motel complex.[1] Mr. Patel spoke to Suzette Henderson, an employee of Bryan. According to the deposition testimony of both Mr. Patel and Ms. Henderson, Mr. Patel was seeking to secure flood insurance, to the maximum extent allowed, to cover the entire motel complex. Mr. Patel was informed that the maximum coverage allowed for flood insurance was $500,000 for the building and $100,000 for the contents of the building. Mr. Patel testified that he informed Ms. Henderson that the motel complex consisted of three separate buildings; however, Ms. Henderson testified that she did not learn that the motel complex had three labuildings until approximately April, 2004. Nevertheless, Ms. Henderson completed an application, on Mr. Patel’s behalf, to obtain flood insurance coverage through Audubon Insurance Group (“Audubon”).
According to federal insurance regulations, a separate flood insurance policy was required for each of the three buildings. Only one application was completed for the motel complex; only one policy was procured; therefore, only one of the three buildings — the motel building — was insured. Ms. Henderson admitted that she was unaware that federal flood insurance regulations required a separate application/policy for each building to be covered. Ms. Lea Cole Brown, the vice president/manager of Bryan, also testified that she did not know that a separate policy was needed to procure flood insurance for each of the three buildings.
The application in question was completed and signed by Ms. Henderson and Mr. Patel on January 27, 2004. The SFIP was ultimately purchased from Audubon and was renewed in 2005, 2006, and 2007. In 2008, the SFIP was renewed by New Hampshire Insurance Company (“New Hampshire”). Ms. Henderson testified that the policy was subject to “automatic renewals,” meaning no new application was required to be completed for insurance renewals. However, she testified that she contacted Mr. Patel every year, prior to each renewal, to inquire about possible changes in coverage.
In September 2008, all three buildings sustained flood damage as a result of Hurricane Gustav, and plaintiff filed a claim for damage to the three buildings under the SFIP. New Hampshire denied the claim for flood |sdamage to two of the buildings (the restaurant and office), stating that coverage was not available for all three buildings because only one application had been completed concerning the property; therefore, it only owed for damages to one of the buildings (the motel structure).[2]
*528 On June 5, 2009, plaintiff filed the instant lawsuit against Bryan, alleging that the insurance agency breached its duty “to procure full insurance coverage for all of plaintiffs business operations[.]” Subsequently, plaintiff moved for partial summary judgment, arguing that defendant was solely liable for failing to procure a separate policy of flood insurance for each of the three buildings. In response, defendant filed a peremptory exception of prescription, arguing that the one-year prescriptive period and three-year peremptory period had lapsed. In the alternative, defendant moved for summary judgment, arguing that the loss incurred by plaintiff resulted from Mr. Patel’s negligence in “failing to read and understand the clear terms of the policy application that he signed.”
The district court denied defendant’s peremptory exception of prescription, stating:
[T]he peremptive period under La. R.S. 9:5606, began to run on the date the defendant discovered that the policy in question did not cover all three buildings and communicated that discovery to plaintiff. This is the date the attempted act, omission or neglect is discovered or should have been discovered by plaintiff under La. R.S. 9:5606. And not from the date the policy was first acquired or the date it was last renewed. Certainly, plaintiff had no reason to file a lawsuit against Bryan |4until the loss suffered by all three buildings occurred.
The court also denied defendant’s motion for summary judgment, stating:
[Pjlaintiff, Sitaram, through Mr. Patel, sought flood insurance coverage on the entirety of the motel premises. Mr. Patel indicated in his deposition that he wanted the maximum coverage available for the motel premises consisting of the three buildings. Mr. Patel indicated that he did not have a background in insurance and had no knowledge about flood insurance programs or any other special requirements pertaining to flood insurance. Mr. Patel indicated in his deposition that he relied on the Agent, Bryan, to provide him with the coverage that he requested. There’s an indication also in the record that the insurance was readily available if a separate policy had been issued for each of the buildings. But the agent, Bryan, did not know about the separate policy requirements according to the employees of Bryan. There is also an indication from the record that Bryan never notified plaintiff [that] the requested coverage was not obtained because Bryan thought it had placed the proper coverage. In other words, the Bryan employees thought that the one policy covered all three buildings. The employees indicated that they had no knowledge whatsoever that three policies were required.
[[Image here]]
The defendant, Bryan, was under a legal duty to procure the flood insurance coverage on all three buildings as allegedly requested by plaintiff. From the deposition testimony, it is clear that plaintiff was seeking flood insurance coverage on all three buildings. And Bryan employees were unaware of the SFIP requirement of one policy, one building[,j coverage in this case.
It is also clearly shown in the deposition testimony that within two or three months after the first standard flood insurance application was completed, Bryan had information that there were three separate buildings located on the *529 motel premises owned by plaintiff. Thereafter, four additional policies were issued providing flood insurance coverage for only the motel building in question.
* ⅜ ⅜
[T]his court finds that under the peculiar facts of this case, the duty of the defendant to provide appropriate coverage for three buildings trumps plaintiffs duty to read and understand the policy and the application | ¿provisions limiting coverage to one building.
[[Image here]]
The court granted plaintiffs motion for partial summary judgment, stating:
[Pjlaintiff has shown sufficient proof that there is no issue of material fact that number one, there was an undertaking or an agreement by the defendant to procure flood insurance on all three buildings and number two, there was a failure by the defendant to provide such coverage for all three buildings and a failure of the defendant to notify plaintiff promptly that defendant had failed to obtain the requested coverage. And number three, that the actions of the defendant warranted an assumption by the plaintiff that all three buildings were properly insured.
Defendant now appeals.
DISCUSSION

Prescription

Defendant contends the district court erred in failing to sustain its peremptory exception of prescription. Defendant argues that the “alleged act, omission, or neglect” occurred in January, 2004, when the application for the first SFIP was completed; therefore, the action prescribed in January, 2005. Additionally, the lawsuit was not filed until June, 2009, more than five years after the “alleged act, omission or neglect”; thus, the action is extinguished by peremption.
A party urging an exception of prescription has the burden of proving facts to support the exception unless the petition is prescribed on its face. Cichirillo v. Avondale Industries, Inc., 2004-2894 (La.11/29/05), 917 So.2d 424; Sanders Family LLC No. 1 v. Sanders, 46,476 (La. App.2d Cir.12/14/11), 82 So.3d 434, writ denied, 2012-0414 (La.4/9/12), 85 So.3d 702. The applicable prescriptive period is determined by the character of the action disclosed in the pleadings. Starns v. Emmons, 538 So.2d 275 (La.1989); Johnson v. Ledoux, 42,090 (La.App.2d Cir.5/16/07), 957 So.2d 911, writ denied, 2007-1482 (La.10/5/07), 964 So.2d 946.
LSA-R.S. 9:5606 provides, in pertinent part:
A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
[[Image here]]
D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning Civil Code Article *530 8458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
(Emphasis added).
Because the time limitation set forth in LSA-R.S. 9:5606 is peremptive, the continuing tort doctrine, which is a suspensive principle, is inapplicable to claims governed by this statute. State, Div. Of Administration, Office of Risk Management v. National Union Fire Ins. Co. of Louisiana, 2007-1134 (La.App. 1st Cir.2/8/08), 984 So.2d 91, writ denied, 2008-0548 (La.4/25/08), 978 So.2d 370; Bel v. State Farm Mutual Automobile Ins. Co., 2002-1292 (La.App. 1st Cir.2/14/03), 845 So.2d 377, writ denied, 2003-0733 (La.5/30/03), 845 So.2d 1057. As such, if a claim|7is not filed within three years of the alleged act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery. Id.
Generally, subsequent renewals of insurance policies do not operate to restart peremption. Branton v. Maddox, 42,853 (La.App.2d Cir.1/9/08), 974 So.2d 190, citing White v. Allstate Ins. Co., 513 F.Supp.2d 674 (E.D.La.2007). However, renewals can be the basis of separate torts, if the complained of conduct constitutes separate and distinct acts, which give rise to immediately apparent damages. Branton, supra; Bel, supra; Fidelity Homestead Association v. Hanover Ins. Co., 458 F.Supp.2d 276 (E.D.La.2006). The inquiry is whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement. Branton, supra; White, supra.
In the instant case, Mr. Patel testified that he contacted the insurance agency by telephone in January 2004, and informed Ms. Henderson that he wanted “the maximum” flood insurance coverage. Days later, Mr. Patel received an insurance quote from Ms. Henderson; he approved the quote and instructed her to “go ahead and get it.” He received the application by mail and signed it. Mr. Patel admitted that he did not read the entire application; he only reviewed the amount of coverage set forth in the application. He stated that he relied on the agency’s employees because “they are the expert[s].” Thereafter, the flood insurance policy was issued and was renewed every year. Mr. Patel testified that he received an invoice from Audubon annually and “paid it.” He stated that he first learned that he |sdid not have full coverage for all three buildings after he submitted a claim to New Hampshire following Hurricane Gustav. He contacted defendant and was offered no assistance. Mr. Patel testified that he was told by one of defendant’s employees to “just do what you [have] to do.” The same employee also informed him, “[W]e did not write your policy; [Ms. Henderson] handled the policy ... and she is no longer working with us.”
Ms. Henderson testified that she assisted Mr. Patel with the insurance application. She admitted that Mr. Patel was seeking to secure flood insurance coverage to the maximum extent allowed for the entire motel complex. Ms. Henderson denied knowing that the motel complex consisted of three separate buildings at the time the application was written; however, she discovered that the premises had three buildings in April, 2004. When she learned that the motel complex had three buildings, she made no effort to modify the policy to insure all of the buildings because she did not know that there was a “one building per policy” requirement. Ms. Henderson also testified that every year, prior to renewing the policy, she spoke with Mr. Patel to discuss the insurance coverage. The colloquy was as follows:
*531 Mr. Crawford: [W]hen the agency realized that there were three buildings comprising the complex, did the agency, when it came time to renew the coverage for the second year, go to Mr. Patel and tell him that it was necessary for three separate policies to be issued so that there would be no problem with the single building coverage limitation?
Ms. Henderson: I don’t know if we did. Mr. Crawford: Do you know why that did not happen?
Ms. Henderson: Because he signed an application for one building and each renewal it showed the building, | athe contents, and when you ask[ed] him, ‘Are there any changes or anything needed,’ and he stipulates, ‘No’ and he renews it direct with the flood plan. It’s not renewed direct with our agency.
* * *
Mr. Crawford: [A]fter you got the photographs, you knew there were three separate buildings?
Ms. Henderson: Correct.
Mr. Crawford: And nothing was done to modify the initially executed and written policy. Is that also correct?
Ms. Henderson: Well, only at renewal time when we ask him if there’s any changes that he needs to make.
After reviewing the record in its entirety, we find that each time Mr. Patel (Sitar-am) sought flood insurance coverage “to the maximum extent,” and the agency failed to procure such coverage, constituted a separate and distinct act. In 2004, Mr. Patel clearly communicated to Ms. Henderson that he wished to insure the property with maximum flood insurance coverage. Each year, prior to the policy renewal date, from 2004 until at least 2007, Mr. Patel and Ms. Henderson discussed his coverage.[3] Even after discovering that the motel complex consisted of three separate buildings, the agency made no effort to procure coverage for all three buildings. In fact, the agency’s employees freely admitted that they were unaware that separate policies were required. Mr. Patel did not discover that a separate policy was required to insure each building until after the motel complex flooded in September, 2008. Likewise, Ms. Brown testified that she did not discover that three separate policies were required until after the motel complex flooded. Ms. Henderson, who by then was employed by another company, | mtestified that she did not learn of the one building per policy rule until approximately 2009, when she “ran across [the requirement while] studying something else.” ■
Based on this record, we find that the district court did not err in denying defendant’s exception of prescription/peremption. The evidence established that Ms. Henderson and Mr. Patel discussed the flood insurance coverage every year prior to renewing the SFIP. At no time did Ms. Henderson attempt to ascertain whether the coverage was adequate under the policy. Neither plaintiff nor defendant discovered that the property was underinsured until September, 2008; plaintiff filed suit within one year of that discovery. Accordingly, we find that plaintiffs claims are not barred by prescription or extinguished by peremption.

Summary Judgment/Partial Summary Judgment

In the alternative, defendant contends the district court erred in denying its motion for summary judgment and in granting plaintiffs motion for partial summary judgment. Defendant argues that Mr. Patel breached his own duty to read and understand his flood insurance cover *532 age. According to defendant, had Mr. Patel done so, he would have seen the language which stated, “ONE BUILDING PER POLICY—BLANKET COVERAGES NOT PERMITTED.” Additionally, defendant argues that Mr. Patel did not inform the agency that the motel complex consisted of more than one building at the time the SFIP application was completed.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed [ 1Tfor by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880; Duncan v. USAA Ins. Co., 2006-363 (La.11/29/06), 950 So.2d 544; See also LSA-C.C.P. art. 966. Appellate courts review summary judgments de novo, while considering the record and all reasonable inferences drawn from the record in the light most favorable to the non-movant. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764; Austin v. Bundrick, 41,064 (La.App.2d Cir.6/30/06), 935 So.2d 836. Summary judgment is warranted only if there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(C)(1).
The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Id. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he or she will be able to satisfy his or her evi-dentiary burden of proof at trial, then there is no genuine issue of material fact. Id.
Insurance agents have no independent duty to identify their clients’ needs. Tillman v. USAgencies Cas. Ins. Co., 46,-173 (La.App.2d Cir.3/2/11), 58 So.3d 1009, writ denied, 2011-0665 (La.5/6/11), 62 So.3d 127; Heidingsfelder v. Hibernia Insurance, L.L.C., 2009-0753 (La.App.4th Cir.11/18/09), 25 So.3d 976. It is the client who has the duty and responsibility |12to determine the coverage needed, advise the agent of those needs, and then to review the policy to determine whether it meets his or her needs. Isidore Newman School v. J. Everett Eaves, Inc. and Westport Insurance Corp., 2009-2161 (La.7/6/10), 42 So.3d 352; Tillman, supra.
An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. Isidore Newman School, supra; Karam v. St. Paul Fire & Marine Insurance Co., 281 So.2d 728 (La.1973).
This duty of “reasonable diligence” is fulfilled when the agent procures the insurance requested. Id. An insured has a valid claim against the agent when the insured demonstrates: 1) the insurance agent agreed to procure the insurance; 2) the agent failed to use “reasonable diligence” in attempting to procure the insurance and failed to notify the client promptly that the agent did not obtain the insurance; and 3) the agent acted in such *533 a way that the client could assume he was insured. Id.
After conducting a de novo review of this record, we find that the district court did not err in granting a partial summary judgment in favor of plaintiff. We also find that the court did not err in denying defendant’s motion for summary judgment.
I^Both Mr. Patel and Mrs. Henderson testified that Mr. Patel clearly informed Ms. Henderson that he was seeking flood insurance coverage, to the maximum extent allowed, for the entire motel complex. Ms. Henderson informed Mr. Patel that the maximum coverage was $500,000 for the building, and $100,000 for the contents. When Mr. Patel received the policy, he reviewed the policy to verify that it had the maximum coverage sought. However, Mr. Patel was unaware that a separate policy was required to insure each building. Mr. Patel testified that he fully believed that he was properly insured for the amount of coverage he desired. He did not learn otherwise until he filed the insurance claim after the motel complex flooded.
Ms. Henderson testified that she was unaware that a separate application and policy were required for each building. She stated that she believed that the procedure for a SFIP was the same as that of commercial insurance — one policy covered all buildings. She also testified that had she known that separate polices were needed, she would have advised Mr. Patel to secure a separate policy for each building.
Ms. Brown testified that, unlike standard insurance policies, flood insurance entails “special rules.” She admitted that the employees of her agency were not fully familiar with flood insurance regulations, as the agency generally did not write flood policies. Ms. Brown conceded that Mr. Patel intended to secure coverage for all three buildings; she admitted that the coverage sought was not procured. She explained that under most commercial property insurance policies, coverage for all buildings | ^associated with the property is generally included in one policy. However, for flood insurance polices, only one building is covered under one policy. She and the agency’s employees were unaware of that fact when plaintiffs policy was written. Ms. Brown also admitted that the agency never informed Mr. Patel that the motel complex was underinsured.
As stated above, Mr. Patel sought the maximum coverage allowed to insure the entire motel complex. Although Bryan, through Ms. Henderson, agreed to procure the coverage sought, Bryan admittedly failed to ascertain that federal flood insurance regulations required a separate policy be issued to cover each separate building. Additionally, over the course of the agent/insured relationship, Bryan made no effort to learn that it had not procured the coverage sought and, thus, failed to communicate that fact to the insured. At all times, Bryan acted in such a way that Mr. Patel assumed that he had the coverage he desired. Accordingly, we find no error in the district court’s judgment.
CONCLUSION
For the reasons set forth herein, we affirm the judgment of the district court denying defendant’s peremptory exception of prescription. We also affirm the district court’s judgment denying defendant’s motion for summary judgment and granting plaintiffs motion for partial summary judgment. Costs of this appeal are assessed to defendant, Bryan Insurance Agency, Inc.
AFFIRMED.

. A SFIP may be purchased either directly from the Federal Emergency Management Agency ("FEMA”) or through private insurers. Private insurers offering such policies are called write-your-own ("WYO”) companies and act as fiscal agents of the United States. See, Sitaram, Inc. v. New Hampshire Ins. Co., 771 F.Supp.2d 624, 628 (W.D.Louisiana 2011); Dwyer v. Fidelity Nat’l Prop, and Cas. Ins. Co., 565 F.3d 284 (5th Cir.2009).

. On August 31, 2009, plaintiff filed a lawsuit against New Hampshire in federal court. In *528 that case, the federal court granted summary judgment in favor of New Hampshire and denied plaintiff's motion for partial summary judgment. Sitaram, Inc., supra.

. Ms. Henderson was employed by Bryan until approximately 2007.