GARRETT, J.
| jThe plaintiffs, Ausborn Cleve Grant and Tina Marie Grant, and the intervenor, Louisiana Safety Association of Timber-men-Self Insurers Fund (“Timbermen”), appeal from the trial court’s grant of summary judgment in favor of the defendants, Kelly Sneed, Ben Freelon, and Weyer-haeuser Company. The trial court found that the plaintiffs’ tort claim was barred because Weyerhaeuser was the statutory employer of Grant, and their exclusive remedy was in workers’ compensation. For the following reasons, we reverse and remand for further proceedings.
FACTS
Weyerhaeuser claimed to have a contract to sell two-by-four lumber to Lum *63 bermen’s Merchandising Corporation (“LMC”), with delivery to be made to Orange County Building Material in Vidor, Texas. The purported contract specified that the lumber was to come from Weyer-haeuser’s mill in Dodson, Louisiana. Wey-erhaeuser also had a mill in Taylor, Louisiana, which did not have a planer to finish the boards. According to Weyerhaeuser, some of the lumber from the Taylor mill was transported to the Dodson mill for finishing before it was shipped to LMC.
On January 17, 2008, Weyerhaeuser entered into a Core Carrier Truckload Motor Carrier contract with Will Transport Company (“Will Transport”) to haul lumber from Taylor to Dodson. The contract was signed by Karl Pentecost in his capacity as manager of Will Transport and specified that Will Transport was an independent contractor and the employees of Will Transport were not the employees of Wey-erhaeuser.
li>On January 3, 2005, Will Transport entered into an equipment lease agreement with Dan Varnado, who did business as V & M Trucking, whereby V & M was to lease a truck to Will Transport and was to provide a driver for the truck. The lease specified that Varnado was an independent contractor. Grant worked for V & M and was assigned to drive the truck leased to Will Transport.
On June 19, 2008, Grant drove V & M’s truck to the Taylor mill to pick up a load of lumber to transport to Dodson. Kelly Sneed was the forklift operator employed by Weyerhaeuser who loaded loose bundles of lumber onto the truck. After the bundles were loaded, Grant was tying down the load when he alleges that a two-by-four fell, striking him on the left side of the head and shoulder. V & M had workers’ compensation insurance with Timber-men. Grant made a workers’ compensation claim against V & M, which was paid on its behalf by Timbermen.
On June 2, 2009, Grant and his wife filed suit for personal injury and damages against Weyerhaeuser and Sneed, as well as Ben Freelon, the plant manager at the Taylor mill. They claimed Grant was injured through the negligence of the defendants. His wife asserted a loss of consortium claim. Timbermen filed a petition of intervention, seeking to recover past and future workers’ compensation benefits if the plaintiffs were successful in their damage claim against the defendants.
On October 18, 2013, the defendants filed a motion for summary judgment, claiming that Weyerhaeuser was the statutory employer of Grant and the plaintiffs’ exclusive remedy was in workers’ compensation, under |sLa. R.S. 23:1032(A) and 23:1061. The defendants asserted that the two-contract theory applied, whereby Weyerhaeuser’s contract with LMC, its contract with Will Transport to fulfill the LMC contract, and Will Transport’s contract with V & M extended immunity from tort to Weyerhaeuser as a principal, regardless of how far removed it was from the direct employer of the injured worker. The defendants also argued that Timber-men’s intervention must fall.
The plaintiffs and Timbermen opposed the motion for summary judgment, claiming that Weyerhaeuser did not prove its status as the statutory employer of Grant. At the conclusion of the hearing, the trial court issued this ruling from the bench:
After reviewing the briefs and arguments of both-all-of the attorneys, I’m going to adopt the argument of the defendants in this case and grant that there is no material issue and no material fact. And I think, he is a statutory employer. Therefore, the Motion for Summary Judgment is, therefore, granted.
*64 The claims of the plaintiffs and Timber-men against the defendants were dismissed with prejudice. The plaintiffs arid Timbermen appealed.
SUMMARY JUDGMENT PRINCIPLES
Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A). A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 2007-1726 (La.2/26/08), 977 So.2d 880. Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show |4that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C. art. 966(C)(2).
An adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or other appropriate summary judgment evidence, must set forth specific facts showing that there is a genuine issue for trial. La.C.C.P. art. 967; Samaha v. Rau, supra.
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup’rs of La. State Univ., 591 S‘o.2d 342 (La.1991); Lewis v. Coleman, 48,173 (La.App.2d Cir.6/26/13), 118 So.3d 492, writ denied, 2013-1993 (La.11/15/13), 125 So.3d 1108.
Under our de novo review, we find that the trial court erred in granting summary judgment in favor of the defendants. As explained | .¡below, we find that the defendants are unable to show that they are entitled to relief as a matter of law or that there are no genuine issues of material fact.
OWNER OPERATOR EXCLUSION & APPLICABILITY OF LA. R.S. 23:1021(7) & (10)
The plaintiffs and Timbermen argue on appeal that, because Grant was the driver for a trucking owner-operator, and under the terms of the contracts between the parties, Weyerhaeuser is not responsible to Grant under Louisiana law for any workers’ compensation benefits and, therefore, is not entitled to claim tort immunity. This argument has merit and establishes that Weyerhaeuser is unable to show that it is entitled to a summary judgment as a matter of law. The plaintiffs and Timber-men contend that La. R.S. 23:1021(7) and (10) apply here and specifically exclude the application of the Louisiana Workers’ Compensation Act (“LWCA”) to this case.[1]
LLa. R.S. 23:1021(7) provides:
*65 As used in this Chapter, unless the context clearly indicates otherwise, the following terms shall be given the meaning ascribed to them in this Section:
(7) “Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from, the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter. [Emphasis supplied.]
La. R.S. 23:1021(10) specifies:
(10) “Owner operator” means a person who provides trucking transportation services under written contract to a common carrier, contract carrier, or exempt haulers which transportation services include the lease of equipment or a driver to the common carrier, contract carrier, or exempt hauler. An owner operator, and the drivers provided by an owner operator, are not employees of any such common carrier or exempt hauler for the purposes of this Chapter if the owner operator has entered into a written agreement with the carrier or hauler that evidences a relationship in which the owner operator identifies itself as an independent contractor. For purposes of this Chapter, owner operator does not include an individual driver who purchases his equipment from the carrier or hauler, and then directly leases the equipment back to the carrier or hauler with the purchasing driver. [Emphasis supplied.]
La. R.S. 23:1021(7) and (10) were added by La. Acts 2004, No. 188, § 1. This legislation and the jurisprudence interpreting it are clearly adverse to the position being taken by the defendants in this matter. Although the |7cases discussed below arose *66 in the context of a claim for workers’ compensation benefits, the reasoning by the courts is instructive in this case.
In 2008, this court considered the applicability of the new provisions in Hair v. Louisiana Crane & Trucking Co., 43,566 (La.App.2d Cir.9/17/08), 996 So.2d 435. The plaintiff trucker hauled goods for the defendant carrier. In 2005, the business relationship was formalized by a contract which specified that the plaintiff was an independent contractor. The plaintiff was injured hauling a load for the defendant carrier and sought to recover workers’ compensation benefits. The defendant filed a motion for summary judgment claiming that workers’ compensation benefits were not due because the plaintiff was an independent contractor. This court affirmed the grant of summary judgment in favor of the carrier, finding that La. R.S. 23:1021(7) and (10) applied and there was no employer-employee relationship between the plaintiff and the defendant.
In Council v. FedEx Custom Critical, Inc., 46,558 (La.App.2d Cir.9/21/11), 73 So.3d 461, writ denied, 2011-2332 (La.12/2/11), 76 So.3d 1178, this court again considered the applicability of La. R.S. 23:1021(7) and (10). In that case, the plaintiff signed an independent contractor agreement with SB Transports, which had an agreement for “Leased Equipment and Independent Contractor Services” with FedEx. The agreement between SB Transports and FedEx specified that neither SB Transports nor any of its employees or agents would be considered the employees of FedEx. The plaintiff was injured loading a truck and filed a claim for workers’ compensation benefits against SB Transports and FedEx. | ⅝⅛ affirming the dismissal of the plaintiffs action against FedEx on an exception of no right of action, this court observed that, in enacting La. R.S 23:1021(7) and (10), the legislature intended to override prior law with respect to contract drivers.
Recently, in Bridges v. New Orleans Trucking & Rental Depot, Inc., supra, the plaintiff truck driver drove for Varice James, an owner operator who had an independent contractor agreement with New Orleans Trucking. The plaintiff was injured and filed a workers’ compensation claim against James and New Orleans Trucking. New Orleans Trucking asserted that it was not required to pay workers’ compensation benefits to the plaintiff because he was an independent contractor. In reversing a judgment awarding workers’ compensation benefits, the first circuit considered La. R.S. 23:1021(7) and (10), noting that the legislature has recognized that owner operators, and their drivers, are not employees of the common carrier if the owner operator and the common carrier enter into a written contract that identifies the owner operator as an independent contractor. La. R.S. 23: 1021(7) and (10) precluded the plaintiffs entitlement to workers’ compensation benefits from New Orleans Trucking. The first circuit quoted La. R.S. 23:1061 in a footnote, but obviously found it did not apply to the case. See also Course v. Fox Wolff Const., 08-58 (La.App. 5th Cir.5/27/08), 987 So.2d 277, writ denied, 2008-1396 (La.9/26/08), 992 So.2d 992.
In this case, the contract between Wey-erhaeuser and Will Transport was entitled “Core Carrier Truckload Motor Carrier Contract (U.S.)” and |3was signed by the representative of Will Transport on January 17, 2008. The contract specified as follows:
12. INDEPENDENT CONTRACTOR. At all times during the term of this Agreement, and any renewals, Carrier will:
12.1 At its sole cost and expense, employ or engage the services of fully *67 qualified personnel in the operation of vehicles, equipment and facilities. Consistent with its own labor practices, Carrier will be responsible for its labor relations policies, and all collective bargaining. Weyerhaeuser will have no control or right to exercise any control whatsoever over the employees of Carrier in the performance of Carrier’s obligations under this Agreement or any other agreement entered into between the parties.
12.2 Be an independent contractor and the persons operating vehicles and equipment will not be employees of Weyerhaeuser.
12.3 Utilize such individuals and organizations as it may deem necessary in connection with Services.
12.4 Assume full responsibility for payment of all freight bills and other invoices for transportation, and other services, performed for its benefit by underlying drayage agents, contractors, and line-haul motor carriers. If Weyer-haeuser is sued in connection with Carrier’s failure to comply with this sub-paragraph, Carrier will indemnify and reimburse Weyerhaeuser for all costs and attorney fees associated with defense or payment.
12.5 Assume full responsibility for the withholding and payment of all local, state, and federal payroll taxes of all its own employees.
12.6 Assume full responsibility for payment of employer social security taxes, unemployment insurance taxes, and for making required contributions to hospitalization and medical plans, old age pension plans, and related employee benefit and protection plans maintained by Carrier.
12.7Pay the required premiums for worker’s compensation insurance on its own employees. [Emphasis supplied.]
linThe contract between Weyerhaeuser and Will Transport also contained “Attachment G” dealing with insurance, which specified in pertinent part:
Carrier will at all times during the Term of Agreement, at its expense, maintain insurance of the types and amounts specified below:
1. Worker’s Compensation Insurance as required by applicable law or regulation.
The agreement between Will Transport and Dan Varnado, who did business as V & M Trucking, was executed on January 3, 2005. The agreement was labeled an equipment lease and Varnado was designated an independent contractor. Will Transport agreed to lease a specific truck owned and operated by Varnado and Var-nado agreed to furnish, at his cost, a driver to operate the truck.
Will Transport was a common carrier. Varnado, doing business as V & M, was an owner operator and was designated as an independent contractor in the written agreement with Will Transport. Therefore, under La. R.S. 23:1021(10), V & M and Grant, who was a driver provided by V & M, are not employees of Will Transport for purposes of the LWCA.[2] Further, the contractual relationship between Will Transport and Weyerhaeuser specifically provided that Will Transport was an independent contractor and its employees were not employees of Weyerhaeuser. We find *68 that La. R.S. 23:1021(7) and (10) apply and, under these statutes, | n Weyerhaeuser would not be liable to Grant for workers’ compensation benefits. Therefore, because workers’ compensation is not Grant’s exclusive remedy against Weyerhaeuser and its employees, the plaintiffs’ tort claim and the intervenor’s action against the defendants company are not barred. The trial court erred in granting summary judgment in favor of the defendants because they are unable to, show entitlement to relief as a matter of law.
TWO CONTRACT THEORY
The plaintiffs and Timbermen have also addressed the defendants’ contentions that the two contract theory applies in this matter, making workers’ compensation the exclusive remedy available to the plaintiffs in this case. They argue that Weyerhaeu-ser has not shown that the two contract theory of the LWCA applies in this matter to make Weyerhaeuser the statutory employer of Grant. Our ruling regarding the applicability of the owner operator exclusion, discussed above, may render consideration of this argument moot. Nevertheless, we also note from our de novo review that there are deficiencies in the proof submitted by Weyerhaeuser in support of its motion. These deficiencies also preclude a grant of summary judgment in favor of the defendants.
In some instances, an employer may be the statutory employer of a worker that it does not directly employ. Dugan v. Waste Mgmt., Inc., 45,407 (La.App.2d Cir.6/23/10), 41 So.3d 1263. See also McGinnis v. Waste Mgmt. of La. LLC, 40,330 (La.App.2d Cir.10/26/05), 914 So.2d 612. The exclusive remedy provision of the workers’ compensation statute | ^precludes an employee from filing a lawsuit for damages against “his employer, or any principal ... or employee of such employer or principal^]” La. R.S. 23:1032(A)(l)(a). A “principal” is defined in La. R.S. 23:1032(A)(2) as “any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.” Dugan v. Waste Mgmt., Inc., supra.
La. R.S. 23:1061 provides in pertinent part:
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any “principal” as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the “contractor”, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of *69 the principal to generate that individual principal’s goods, products, or services.
(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee’s immediate employer.
3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist | ^between the principal and the contractor’s employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor’s employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
When a defendant invokes the immunity of a statutory employer under La. R.S. 23:1032, it has the burden of proving this immunity. If La. R.S. 23:1061 is being used by the principal as a shield to insulate himself from tort liability, then this takes the form of an affirmative defense as to which the principal has the burden of proof. 13 H. Alston Johnson III, Workers’ Compensation Law & Practice (La. Civil Law Treatise) § 126 (5th ed. 2010), pp. 268-269. The statute is strictly construed against the party claiming the immunity. McGinnis v. Waste Mgmt. of Louisiana LLC, supra.
There are two bases for finding statutory employment: (1) being a principal in the middle of two contracts, referred to as the “two contract theory,” or (2) the existence of a written contract recognizing the principal as the statutory employer. Dugan v. Waste Mgmt., Inc., supra. The parties in this matter agree there is no written contract recognizing Weyerhaeu-ser as the statutory employer of Will Transport, V & M, or Grant. The defendants’ sole argument is that Weyerhaeuser is a statutory 'employer under the two contract theory.
114Under La. R.S. 23:1061, the two contract theory applies when: (1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth., 2002-1072 (La.4/9/03), 842 So.2d 373; Dugan v. Waste Mgmt., Inc., supra. The two contract statutory employer status contemplates relationships among at least three entities: a general contractor who has been hired by a third party to perform a specific task, a subcontractor hired by that general contractor, and an employee of the subcontractor. Naiman v. Goldsberry Operating Co., 43,-266 (La.App.2d Cir.6/11/08), 987 So.2d 326.
The defendants bore the burden of proving the application of the two contract theory in this case. The first requirement of the theory is that the principal enters into a contract with a third party. Weyer-haeuser claims its agreement with LMC satisfied this requirement. The record does not support this claim. The three- *70 page document that the defendants urge is a contract with LMC is not signed by either party. In his affidavit, Gary Everett, general manager of southern pine lumber sales for Weyerhaeuser, acknowledged that the contract with LMC was never signed. He claimed there was a verbal agreement between the parties in the fall of 2007. The first page of the unsigned document is entitled “2007 Mill Direct Contract Terms of Sale Southern Pine Lumber.” The next page is entitled “2008 Mill | ^Direct Contract Terms of Sale Southern Pine Lumber.”[3] The third page is blank. The document contains a vague formula for determining the price of lumber. It is difficult to determine from the document how much lumber was to be shipped. Presumably the price of the lumber was more than $500. Regarding the proof of contracts not required to be in writing, with a price or value in excess of $500, the contract must be proved by at least one witness and other corroborating circumstances. La. C.C. art. 1846. The only proof of any alleged contract is the affidavit of Everett. No official from LMC gave an affidavit or deposition confirming the existence of the contract. There are no corroborating circumstances showing the existence of a contract with LMC. Without this critical element of proof, the defendants failed to show that they are entitled to summary judgment.
Additionally, even if the defendants had proven the existence of a contract with a third party which required that work be performed, the defendants also failed to show that Grant was performing work to fulfill that contract at the time his injury occurred. While there is some indication that Grant hauled primarily between Taylor and Dodson, there is no showing that the lumber involved in this case was to be used in satisfaction of the purported contract with LMC. Therefore, the defendants have failed to establish another element of proof necessary to support their motion for summary judgment.
| ^CONCLUSION
For the reasons stated above, the trial court erred in granting summary judgment in favor of the defendants, Weyer-haeuser Company, Kelly Sneed, and Ben Freelon, dismissing the claims of the plaintiffs, Ausborn Cleve Grant and Tina Marie Grant, and the intervenor, Louisiana Safety Association of Timbermen-Self Insurers Fund. The matter is remanded to the trial court for further proceedings. Costs in this court are assessed to the defendants.
REVERSED AND REMANDED.

. The defendants argue that, because the plaintiffs and Timbermen did not, at the hearing on the motion for summary. judgment, specifically raise the issue of whether the ex- *65 elusion of La. R.S. 23:1021(10) applies to this case, the argument has been waived and cannot be asserted for the first time on appeal. La. C.C.P. art. 2164 provides that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. URCA-Rule 1-3 states:
The scope of review in all cases within the appellate and supervisory jurisdiction of the Courts of Appeal shall bé as provided by LSA-Const. Art. 5, § 10(B), and as otherwise provided by law. The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.
The issue of whether any of the parties are independent contractors so as to exclude application of the exclusive remedy of the LWCA as to the defendants was raised in the trial court in the opposition to the motion for summary judgment. The plaintiffs and Tim-bermen have simply asserted additional reasoning in support of their argument. One of the cases now cited to this court, Bridges v. New Orleans Trucking & Rental Depot, Inc., 2013-1969 (La.App. 1st Cir.6/27/14), 146 So.3d 288, was rendered after the hearing held below. We note that this matter is before us on appeal from the grant of a motion for summary judgment and our standard of review is de novo. We are obligated to consider all relevant law. The record contains all relevant evidence necessary to evaluate the argument. The defendants had ample opportunity to address the contentions in their brief to this court and in oral argument of this matter. In the interest of justice and judicial economy, we will consider the argument.

. The defendants contend that Will Transport admitted it was a statutory employer of Grant and liable for workers' compensation benefits. Any agreement that may have been confected between Will Transport and Grant as to liability for workers’ compensation benefits has no bearing on our examination and application of the pertinent law in this matter regarding the defendants' immunity from tort liability.

. It is interesting to note that these two pages appear to have been taken from two separate documents.