Judgment rendered March 9, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,184-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

PRINCETON JUMPER                           Plaintiff-Appellant

versus

STATE FARM MUTUAL                          Defendant-Appellee
AUTOMOBILE INSURANCE
COMPANY

* * * * *

Appealed from the
Bastrop City Court for the
Parish of Morehouse, Louisiana
Trial Court No. 26260-19

Honorable Phillip Murray Lester, Judge

* * * * *

ANTHONY J. BRUSCATO                         Counsel for Appellant


DAVENPORT, FILES & KELLY                    Counsel for Appellee
By: Carey Brad Underwood
    Stephen P. Dillon
    Grant M. Tolbird

* * * * *

Before COX, THOMPSON, and O'CALLAGHAN (*Pro Tempore*), JJ.

**O'CALLAGHAN, J. (*Pro Tempore*)**

In this case involving an insurance claim for medical payments and uninsured motorist ("UM") coverage, the plaintiff, Princeton Jumper, appeals a summary judgment granted in favor of the defendant, State Farm Mutual Automobile Insurance Company ("State Farm"). For the reasons expressed below, we affirm the trial court judgment.

## FACTS AND PROCEDURAL HISTORY

The plaintiff was injured while traveling as a passenger in a friend's car. Neither his mother nor her boyfriend was present for or involved in the accident. None of the vehicles in the accident were owned by Jumper, his mother, or her boyfriend. He is now attempting to recover under an automobile policy which was issued to his mother's boyfriend and defines a "resident relative" as someone who lives with the named insured and is related to the named insured "by blood, marriage, or adoption." The undisputed facts below were gleaned from the pleadings and various exhibits submitted in support of the motions for summary judgment, particularly Jumper's June 2019 deposition and the affidavits submitted by his mother and her boyfriend.

Jumper, who was born in 1993, has lived with his mother, Princess Murry, his entire life. Since he was approximately 11 years old, his mother has been in a relationship with Harry Moore. Moore began residing with Murry and her son in about 2008. However, Moore and Murry have never married as Murry is married to someone else. In late 2013, Murry experienced problems with her car. As a result, Moore decided to buy her a new vehicle as a gift. They selected a Ford Fusion, which Moore bought and financed in January 2014; the title to the car was in his name. As part of

his gift, Moore decided to pay for insurance on the vehicle.  To that end, he contacted his State Farm agent, Ron Bush.  The State Farm application listed Moore as the registered owner of the Ford Fusion and Murry as its principal operator.

The policy declarations page on the Fusion for policy period January 24, 2014, to July 2, 2014, listed only Moore as the named insured. [1] The Definitions section of the policy contains the following relevant provisions:

> **Non-Owned Car** means a **car** that is in the lawful possession of **you** or any **resident relative** and that neither:
> 1. is **owned by**:
>     a.    **you**;
>     b.    any **resident relative**[.]
> . . .
>
> **Resident Relative** means a **person**, other than **you**, who resides primarily with the first **person** shown as a named insured on the Declarations Page and who is:
>
> 1. related to that named insured or his or her spouse by blood, marriage, or adoption[.]
> . . .
>
> **You** or **Your** means the named insured or named insureds shown on the Declarations Page.  If a named insured shown on the Declarations Page is a **person**, then **"you"** or **"your"** includes the spouse of the first **person** shown as a named insured if the spouse resides primarily with that named insured.

Under Medical Payments Coverage, the following additional definition is found:

> **Insured** means:
> 1. **you** and **resident relatives**:
>     a.  while **occupying**:

---

[1] The 2014 declarations page is the only one in the record.  The certified policy record statement attached to the copy of the policy stated that "[i]t is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs.  Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction."  It further states that the policy was in effect on the loss date of 05/01/2018.

(4) *a non-owned car*[.]

The Insuring Agreement pertaining to medical payments coverage states as follows:

> *We* will pay:
> 1. *medical expenses* incurred because of *bodily injury* that is sustained by an *insured* and caused by a motor vehicle accident[.]

The Uninsured Motor Vehicle Coverage section contains the following relevant provisions:

> **Additional Definitions**
>
> *Insured* means:
> 1. *you*;
> 2. *resident relatives*;
> 3. any other *person* while *occupying*:
>     a. *your car*;
>     b. a *newly acquired car*;
>     c. a *temporary substitute car*; or
>     d. a rental *private passenger car* rented to *you*.
>
> **Insuring Agreements**
>
> 1. Under Uninsured Motor Vehicle Coverage, *we* will pay nonpunitive damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. [Emphasis in original.]

In May 2018, Moore paid off the Fusion. On May 31, 2018, he donated the car to Murry, who then had the title put in her name. However, on May 1, 2018, while the car title was still in Moore's name, Jumper was in an auto accident while a guest passenger in a friend's vehicle. Jumper collected an amount from the tortfeasor's insurer which was allegedly insufficient to compensate him for his injuries. As a result, he made a claim for medical payments coverage under the State Farm policy covering his mother's vehicle. State Farm denied the claim on the basis that Jumper was not a "resident relative" of the named insured, Moore.

On January 7, 2019, Jumper filed suit against State Farm, asserting that its denial of his claim for medical payments was arbitrary, capricious, without probable cause, and lacking in good faith. He requested penalties and attorney fees. On March 11, 2019, State Farm filed an answer in which it asserted that it issued an auto policy to Moore covering a Dodge Ram truck and a Ford Fusion. It further alleged that its policy defined "resident relative" as a person related to Moore "or his or her spouse by blood, marriage or adoption." Because Jumper was occupying a non-owned car and was not related to Moore by blood, marriage, or adoption, State Farm alleged that its policy did not provide coverage for medical payments to him. On April 16, 2019, Jumper filed an amended petition in which he additionally alleged that the State Farm policy included UM coverage. State Farm answered this petition on April 24, 2019.

On October 18, 2019, Jumper filed a motion for partial summary judgment on the issue of insurance coverage. He asserted that, due to a clerical error, Murry was not put on the policy as a named insured and that the policy should be reformed. In support of his motion, he attached the following exhibits: the affidavits of Moore and Murry, the State Farm policy, the vehicle title history, and the insurance application. In their affidavits, Moore and Murry stated that they had been in a relationship for many years and considered themselves to be engaged. They recounted Moore's 2014 purchase of the Fusion, which they asserted was intended to be Murry's personal vehicle. Moore stated that he called his insurance agent and told him that he was buying a car for Murry and he wanted her to have "full coverage" on the car, "the same coverage I had on my own vehicle." Murry stated in her affidavit that the agent had her come in to his office with

her driver's license. According to Murry, the agent took the application and put on it that Moore was the record owner and she was the principal driver. Her understanding was that she would have "full insurance coverage" on the car, the "exact same coverage" for her on her vehicle as Moore had for himself on his. Both stated that Moore made all the payments on the car and its insurance until it was paid off in May 2018. On May 31, 2018, he signed an act of donation so that Murry could have the title changed.

On January 22, 2020, State Farm filed its own motion for summary judgment. It contended that, since Jumper was not related to Moore by blood, marriage, or adoption, its policy did not provide coverage for the injuries Jumper sustained in the accident while occupying a non-owned vehicle. In support of its motion, State Farm attached its policy, the petition, the amended petition, and Jumper's deposition.

A hearing on the cross motions for summary judgment was held on February 4, 2020. Jumper's counsel conceded that, since Jumper was not related to Moore, there could be no UM coverage. He then contended that the policy should be reformed due to a clerical error by State Farm in not listing Murry as an additional named insured. Although Moore was the title holder, he asserted that Murry could be the true owner of the car. State Farm argued that the lack of coverage was clear under the terms of its policy and the facts. In support of its position, State Farm cited the factually similar cases of *Lemoine v. Illinois Nat. Ins. Co.*, 38,237 (La. App. 2 Cir. 3/12/04), 868 So. 2d 304, *writ denied*, 04-0926 (La. 6/4/04), 876 So. 2d 86, and *writ denied*, 04-0904 (La. 6/4/04), 876 So. 2d 87, and *Munson v. Dupre*, 497 So. 2d 320 (La. App. 3 Cir. 1986). As to reforming the policy, State Farm further pointed out that the plaintiff had not alleged any clerical error in his

5

petitions. State Farm asserted that, even if Murry had been included as a second named insured, Jumper would not quality under the policy definition of a "resident relative" because Moore would have been the first named insured since the title was in his name. The trial court observed that there was no deposition of the insurance agent asking whether there was a mistake. At the conclusion of the hearing, the trial court denied both motions.

On January 4, 2021, State Farm filed a second motion for summary judgment. In addition to the exhibits submitted with the first motion, it included an affidavit from State Farm agent Ron Bush. In his affidavit, Bush stated that he wrote the policy for Moore; neither Murry nor Jumper were listed as named insureds under the policy on May 1, 2018; and no request was ever received to add Murry or Jumper as a named insured to the policy prior to May 1, 2018. On February 22, 2021, Jumper filed a memorandum in opposition to the motion in which he again blamed the failure to add his mother as a named insured upon a clerical error by State Farm's representatives. [2] He asserted that Bush's "narrowly drafted" affidavit was "couched in conclusory terms." He also contended that he had tried unsuccessfully to depose Bush and attached copies of a July 2019 subpoena for State Farm documents and emails in which taking Bush's deposition was discussed. [3] As a result of these factors, he argued that the

---

[2] In conjunction with his opposition, Jumper submitted several exhibits he used to support his own motion for summary judgment, such as the affidavits of Moore and Murry and the policy declarations page.

[3] We note that the emails are not competent summary judgment evidence as they are not attached to an affidavit and are thus unsworn. Consequently, we cannot consider them. *Asi Fed. Credit Union v. Certain Underwriters at Lloyd's of London Syndicate 1414 Subscribing to Pol'y FINFR1503374*, 18-164 (La. App. 5 Cir. 11/7/18), 259 So. 3d 552.

affidavit should be stricken and the motion denied. State Farm filed a reply to the opposition in which it asserted that Bush appeared for his deposition, but the plaintiff failed to attend it. As a result, Bush's affidavit was executed on the date when his deposition was scheduled to be taken.

On March 2, 2021, the trial court held a hearing on State Farm's second motion for summary judgment. State Farm reminded the court of its previously expressed wish for an affidavit or testimony from the agent, which had been supplied with its second motion. As to Jumper's assertion of a clerical error, State Farm cited an insured's duty to read his policy and request the appropriate coverage, as well as Moore's failure to amend the policy to include Murry as an insured for four years. On the other hand, Jumper insisted that Moore wanted "full coverage" of Murry's vehicle and, as a result, she should have been made a named insured. He asserted that there was a dispute of material fact as to the understanding of the parties when coverage was requested. Counsel for Jumper reiterated his claim that he had tried to take Bush's deposition. In response, State Farm's counsel maintained that Bush appeared for his deposition and, when the plaintiff failed to show up, Bush executed his affidavit, which was not conclusory.[4] The trial court concluded that it could not get around the insured's obligation to read his policy and ask questions, particularly for a period of four years. It granted State Farm's second motion for summary judgment. Judgment granting the motion for summary judgment and dismissing Jumper's claims

---

[4] Jumper's attorney told the trial judge that he sent a letter saying he would take the agent's deposition if the agent brought his file. However, because he did not receive a reply that the agent would be bringing the file, he chose not to attend the deposition. The deposition was not rescheduled, and State Farm proceeded with its second motion for summary judgment.

against State Farm was signed on March 24, 2021. Jumper appeals from this judgment.

## LAW

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Larson v. XYZ Ins. Co.*, 16-0745 (La. 5/3/17), 226 So. 3d 412; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

The interpretation of an insurance policy ordinarily involves a legal question that can be properly resolved on motion for summary judgment.

8

*Kansas City S. Ry. Co. v. Wood Energy Grp., Inc.*, 53,096 (La. App. 2 Cir. 1/15/20), 289 So. 3d 671; *McGee v. Allstate Ins. Co.*, 52,299 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1161, *writ denied*, 18-2057 (La. 2/18/19), 265 So. 3d 773. The starting point in analyzing insurance policies is the principle that the policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Sensebe v. Canal Indem. Co.*, 10-0703 (La. 1/28/11), 58 So. 3d 441; *McGee v. Allstate Ins. Co.*, *supra*.

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy. *Chretien v. Thomas*, 45,762 (La. App. 2 Cir. 12/15/10), 56 So. 3d 298.

Summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. *Elliott v. Continental Cas. Co.*, 06-1505 (La. 2/22/07), 949 So. 2d 1247; *Reynolds v. Select Properties, Ltd.*, 93-1480 (La. 4/11/94), 634 So. 2d 1180; *Kansas City S. Ry. Co. v. Wood Energy Grp., Inc.*, *supra*.

As other written agreements, insurance policies may be reformed if, through mutual error or fraud, the policy as issued does not express the agreement of the parties. *Samuels v. State Farm Mut. Auto. Ins. Co.*, 06-0034 (La. 10/17/06), 939 So. 2d 1235. *See Tillman v. USAgencies Cas. Ins. Co.*, 46,173 (La. App. 2 Cir. 3/2/11), 58 So. 3d 1009, *writ denied*, 11-0665 (La. 5/6/11), 62 So. 3d 127. In the absence of fraud, the party seeking

9

reformation has the burden of proving a mutual error in the written policy. *Samuels*, *supra*.

It is the insured's responsibility to request the type of insurance coverage, and the amount of coverage needed. It is also well settled that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents. *Isidore Newman Sch. v. J. Everett Eaves, Inc.*, 09-2161 (La. 7/6/10), 42 So. 3d 352. It is the client who has the duty and responsibility to determine the coverage needed, advise the agent of those needs, and then to review the policy to determine whether it meets his or her needs. *Sitaram, Inc. v. Bryan Ins. Agency, Inc.*, 47,337 (La. App. 2 Cir. 9/19/12), 104 So. 3d 524, *writ denied*, 12-2283 (La. 11/30/12), 103 So. 3d 375.

## DISCUSSION

At the outset, we address Jumper's arguments pertaining to Bush's affidavit. We find no merit to Jumper's contention that Bush's affidavit should be stricken. While Jumper argues that he was not allowed to depose Bush, he admitted at the hearing on the second motion for summary judgment that he chose not to attend the scheduled deposition. As a result, in lieu of being deposed, Bush signed the affidavit which was submitted with State Farm's second motion for summary judgment. The affidavit concisely sets forth the relevant information known by Bush about the instant matter. While brief, we do not find the language to be conclusory.

10

As previously noted, State Farm cited the cases of *Lemoine*[5] and

*Munson* [6] to support its position that Jumper was not entitled to coverage

under its policy as a "resident relative." The undisputed evidence submitted

in support of State Farm's second motion for summary judgment

demonstrates that Jumper is not covered under the clear terms of the policy,

as he is not related to Moore, the only named insured, "by blood, marriage,

or adoption." On appeal, Jumper does not seriously contest this position.

Instead, Jumper's primary contention on appeal is that Bush made a

clerical error in not adding Murry as a named insured in the policy. As a

result, he contends that the contract should be reformed to add Murry as a

named insured in order to provide coverage for Jumper as Murry's relative.

---

[5] In *Lemoine*, *supra*, a named insured bought a car for the use of his fiancée, who lived with him, and instructed his insurance agency to add the car to his policy "with full coverage" and add the fiancée as the main driver of the car. At the agency, she presented her driver's license to be copied. The car was added as a covered vehicle and the fiancée was added as a driver. The insurance agent testified that there was no indication of a request to add the fiancée as a named insured and that she would not have been added as a named insured because she was not the owner of the car. The car was later sold and removed from the policy, but the fiancée remained on the policy as a driver. Thereafter, the fiancée was involved in an accident while driving a noncovered auto, and the insurance company denied that it provided any coverage. While the trial court rendered judgment in favor of the named insured and the fiancée, this court reversed. We found that the policy provided coverage for any "insured," which was defined as "you or any 'family member.'" It further defined "you" and "your" as referring to the "named insured" and the "spouse if a resident of the same household," while "family member" meant "a person related to you by blood, marriage or adoption who is a resident of your household." Finding that these provisions were clear and unambiguous, we then concluded that the fiancée did not fall within any of these terms.

[6] In *Munson*, *supra*, the plaintiff's daughter was killed in a collision while a passenger in another person's vehicle. The mother made a UM claim for her daughter's death under a policy on a car owned by a man with whom the mother was living. Although the daughter apparently lived with the unmarried couple, the man was not her father. The policy, upon which the man was the only named insured, defined "insured" as "the named insured and, while residents of the same household, his spouse and the relatives of either." The mother argued that, when the policy was purchased, it was understood with the agent's office that both she and the man were to be insured and that her name also appeared on the application for the policy. Thus, she maintained that her daughter, as her relative, was an insured under the policy. The trial court rejected her claim, and the appellate court affirmed. It was not convinced that there was any agreement for the mother to be a named insured. Furthermore, the record did not contain any written application for insurance, which would not have been part of the policy anyway.

We find no merit to this argument. A similar issue was addressed by this court in the *Lemoine* case, wherein reformation of the insurance policy was sought. We held that reformation of the contract was not required on the basis that it failed to express the parties' true intent. Additionally, the policy was not ambiguous because it did not define the term "driver" or explain its significance regarding coverage. The named insured received what he requested – that the car be added with "full coverage" and the fiancée be added as its main driver. The same is true in the instant case. Moore, the named insured, requested "full coverage" and that his agent provide the same coverage on the Fusion as on his own vehicle. He did not request that Murry be added as a named insured. The declarations page of the issued policy showed one named insured, Moore. As in *Lemoine*, no mutual mistake was established, and reformation of the policy is not appropriate.[7]

Based upon our *de novo* review, we find that summary judgment in favor of State Farm was properly granted.

## CONCLUSION

The trial court judgment which granted State Farm's second motion for summary judgment and dismissed all claims against State Farm is

---

[7] Jumper made several arguments pertaining to delivery of the policy for the first time on appeal. As a general rule, appellate courts will not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. *Mendoza v. Grey Wolf Drilling Co., LP.*, 46,438 (La. App. 2 Cir. 6/22/11), 77 So. 3d 18, *writ denied*, 11-1918 (La. 11/14/11), 75 So. 3d 943. See and compare *Grant v. Sneed*, 49,511 (La. App. 2 Cir. 11/19/14), 155 So. 3d 61, which considered an issue on appeal of a summary judgment because it was mentioned in the trial court in the opposition to the motion for summary judgment, the record contained all information needed to evaluate the argument, and the standard of review was *de novo*. However, in the instant case, Jumper made no reference to delivery of the policy below. Furthermore, nothing in the record (including Moore's and Murry's affidavits) even suggests a failure to receive the policy. In fact, we note that the address given by Jumper in his deposition as his lifelong address (where he lived with Murry and Moore) was the same one found for Moore on the declarations page of the policy.

affirmed.  Costs of this appeal are assessed against the appellant, Princeton Jumper.

**AFFIRMED.**