PARRO, J.
Conrad Frey IV, d/b/a CF Trucking, appeals a judgment finding it owes the Louisiana Workers’ Compensation Corporation $23,940.57 in unpaid premiums for a workers’ compensation insurance policy covering the period from January 27,1999, to January 27, 2000. We reverse.
FACTUAL AND PROCEDURAL BACKGROUND
Conrad Frey IV, d/b/a CF Trucking (CF) is engaged in the trucking business using independent contractors to drive its trucks. CF purchased a continuous annual workers’ compensation insurance policy from the Louisiana Workers’ Compensation Corporation (LWCC) that commenced January 27, 1997. For the first two years, LWCC charged CF an annual premium approximating $1000 per year. During the third year of the policy, CF’s insurance agent sent notarized statements to LWCC in which four persons who had begun driving for CF verified that they were independent contractors who chose to decline workers’ compensation coverage. In May 1999, an LWCC underwriter advised CF’s insurance agent in a faxed memorandum that in order to be excluded from coverage under the CF policy, each driver must be covered under its own workers’ compensation policy. In response to this memorandum, CF’s drivers obtained individual workers’ compensation policies from LWCC. Each of them paid LWCC a $150 deposit and an annual premium of $750 for individual policies,[1] but each of them also excluded himself, as owner, from coverage under these policies under a “partners, officers and others exclusion endorsement,” pursuant to LSA-R.S. 23:1035(A).
During an audit of the CF policy on March 15, 2000, LWCC noticed that CF’s drivers had not been carrying workers’ compensation insurance on themselves. The audit report included individual notations concerning five of the six drivers, stating:
This contract driver has a policy with LWCC ... but he is excluded from coverage on his policy. He is not an owner/operator, he drives [CF’s] trucks.[2]
|sThe auditor’s notes concluded, “This insured appears to have more exposure [than] they are currently paying on.” Based on this audit, LWCC re-calculated CF’s premium for the previous policy year and concluded that, based on remuneration paid to the drivers during 1999, an additional premium in the amount of $23,940.57 was due for coverage of six drivers for the policy period January 27, 1999, through January 27, 2000. After CF refused to pay the additional amount, LWCC can-celled the policy as of May 25, 2000, and filed this suit to collect the additional premium.
*109 CF claimed it had paid all the premiums owed under its policy. In the alternative, CF stated it had relied on LWCC’s representations to its detriment, and should not be required to pay the additional premium for the policy year at issue. At the trial, the parties stipulated to many of the facts and submitted documents in support of their claims, and LWCC presented the testimony of two of its employees who had been involved in the CF audit,and collection efforts. Following the trial, the court took the matter under advisement and accepted post-trial memoranda. On July 9, 2004, the court ruled in favor of LWCC, ordering CF to pay $23,940.57, plus legal interest from date of judicial demand and all court costs. ■ CF’s motion for a new trial was denied, after which CF, suspen-sively appealed the judgment..
DISCUSSION
This case presents an interesting, if somewhat ironic, situation. Based solely on the documents in the record, the following facts can be adduced. LWCC issued a policy in 1997 to an individual, Conrad Frey IV, which provided workers’ compensation insurance coverage for “all employees and drivers.” The policy provision regarding premiums stated the, following, in pertinent part:
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. The premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1) all your officers and employees engaged in work covered by this policy; and
2) all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy.... This paragraph 2 will not apply if you give us proof that the ^employers of these persons lawfully secured their workers compensation obligation.
The premium was based on an estimated annual remuneration of $2,500; a later audit showed the actual payroll for 1997 was $2,797.69 and for 1998 was $8,764.95, and premium adjustments were made and paid to account for the minimal difference.
Endorsements to the policy show that effective April 7, 1999, the narhe of the insured was changed to “Conrad Frey IV dba CF Trucking,” and CF Trucking was added as an insured under the policy. On April 14,1999, CF’s insurance agent sent a letter to LWCC concerning the CF policy, enclosing signed and notarized statements from four drivers who said they were independent contractors and were choosing to decline workers’ compensation coverage. LWCC’s senior underwriting service representative responded to this request, advising that:
In response to your request to exclude the insured’s drivers under the captioned policy, please be advised that the drivers must be covered under their own workers’ compensation policy in order to be excluded from this policy. The law does not allow them to waivé the rights of their legal dependents in case of injury or death.[3]
Four of the men driving for CF obtained workers’ compensation policies from LWCC effective August 4, 1999; a fifth driver purchased a policy in November 1999. LWCC received the minimum annual premium of $750 and a $150 deposit for *110 each policy.[4] The applications attached to the policies showed each was an individual business owner with no employees and no estimated annual payroll. Each policy also contained an endorsement excluding the insured owner from coverage under the policy and a “Non-Election Notice” stating that:
In accordance with Louisiana Revised Statutes, Title 23, Section 1035, I(we) hereby elect to exclude myself (ourselves) from coverage under the captioned policy and not be subject to the provisions of the Louisiana Workers’ Compensation Act while employed with the above named insured.
| nAt the same time that these policies were purchased by CF’s drivers, Conrad Frey IV executed a similar endorsement to the CF policy, whereby he elected to exclude himself from its coverage.[5]
Therefore, by the end of 1999, five persons were paying LWCC premiums for workers’ compensation policies that provided absolutely no coverage to anyone. This fact is obvious from the five drivers’ policy applications and policy documents. If LWCC had not noticed this when it issued the policies, it clearly became cognizant of the situation when it audited the CF policy in March of 2000. Based on this new awareness that none of the drivers were covered under any of their policies, LWCC charged an additional premium to CF, ostensibly for exposure attributable to its drivers during the preceding year, even though no one had made a claim under the policy and five of the persons who might conceivably have made such a claim had opted out of coverage pursuant to LSA-R.S. 23:1035(A).
Prior to an amendment in 2001,[6] that provision stated, in pertinent part:
The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer’s trade, business, or occupation, except that ... a sole proprietor with respect to such sole proprietorship may by written agreement elect not to be covered by the provisions of this Chapter. Such election shall not be limited, but shall apply to all trades, businesses, or occupations conducted by said corporation, partnership, limited liability company, or sole proprietorship. Such an election shall be binding upon the employing corporation, partnership, limited liability company, and sole proprietor and the widow, relatives, personal representative, heirs, or dependents of the officer, partner, member, or sole proprietor so electing. No salary or compensation received by any such bona fide corporate officer, partner, member, or sole proprietor so electing shall be used in computing the premium rate for workers’ compensation insurance.
A careful reading of this statute demonstrates several fallacies in the legal position taken by LWCC in responding to CF’s request to exclude its drivers from coverage under its policy. First, LSA-R.S. 23:1035(A) very clearly does allow a sole proprietor to elect not to be covered by the provisions of workers’ compensation law | fiWhen conducting the business of the sole proprietorship. And under the clear wording of the statute, such an election is *111 “binding upon the ... sole proprietor and the widow, relatives, personal representative, heirs, or dependents of the ... sole proprietor so electing.” Therefore, contrary to the LWCC advisory, the law does “allow them to waive the rights of their legal dependents in case of injury or death.” Second, the statute does not specify with whom or how such a “written agreement” must be made in order to effectuate the election. In another case involving a sole proprietor’s election not to be covered under an LWCC policy, Pierce v. Tom Fullilove Const, Co., 39,349 (La. App. 2nd Cir.1/26/05), 892 So.2d 757, the court noted that under the applicable statutes: [7]
[T]he election not to be covered by the provisions of the chapter may be made by “written agreement.” The statutes do not specify with whom the sole proprietor may make this agreement. The principal contractor argues that the sole proprietor’s election not to be covered by his compensation insurer is such an agreement. Under that interpretation, the written agreement would be between the sole proprietor and his insurer. Another interpretation would be that the statute contemplates that the written agreement would be between the sole proprietor and the principal contractor. We conclude that the language in both statutes is sufficiently broad to encompass both interpretations; the sole proprietor may make the agreement with his own insurer or with the principal contractor.
Pierce, 892 So.2d at 761-62. Therefore, the statements that were written on CF’s stationery, signed by each of CF’s drivers as they began providing services to CF. and notarized, were sufficient to effectuate the election between themselves and CF, the principal contractor. When it received these statements, LWCC was on notice that each of the drivers had opted out of coverage under all the workers’ compensation laws.
The statute clearly states that such an election removes the sole proprietor making it from coverage under “this Chapter.” As the Pierce court explained,
When a sole proprietor elects not to cover himself under his compensation insurance policy, he excludes himself from the benefits of the workers’ compensation laws. An election to opt-out of insurance coverage is, thus, an election to opt-out from the provisions of the compensation Act.
Pierce, 892 So.2d at 764. Upon receiving the signed and notarized written agreements, LWCC was apprised that it had and would have no exposure under the CF policy for workers’ compensation payments to these drivers. Therefore, applying the language of LWCC’s policy, these drivers were not “persons engaged in work that could make us liable” for workers’ compensation payments, and premiums could not be based on remuneration paid to them.[8]
*112 In its assignments of error, CF urges legal error on the part of the district court in several particulars, including its failure to recognize that LWCC’s claim of potential liability for injury claims under CF’s policy was contrary to the explicit language of LSA-R.S. 23:1035(A). Based on the preceding analysis, we agree. Because there never was any exposure to LWCC for claims by these five drivers under the policy it had issued to CF, there was no justification for the additional premium charged for the period of January 27,1999, through January 27, 2000, and the trial court’s failure to recognize this was legal error.[9]
There is no evidence in the record to indicate that the sixth driver made such an election. As previously noted, the LWCC audit showed this driver was paid only $2,255 during the 1999 policy year.[10] Based on the premium calculation shown in the policy of $26.19 per $100 of remuneration, a premium of $590.58 was payable for this driver. As this is less than the $750 per year minimum premium, there is no additional premium due for this driver.
CONCLUSION
For the foregoing reasons, the judgment is reversed. All costs of this appeal are assessed to LWCC.
HUGHES, J., dissents.
REVERSED.

. The four initial drivers purchased their policies in August 1999. It appears that an additional person began driving later in the year, as he did not purchase his policy until November 1999. The record does not include a separate policy for a sixth driver, who was paid only $2,250 during the year.

. The wording varied slightly from one driver to another, but the basic information was the same for each of the five drivers who had purchased LWCC policies.

. This statement is not legally correct in several respects, which will be addressed later in this opinion.

.CF's brief to this court states that CF paid these premiums for its drivers; however, the record has no evidence of the source of the premium payments.

.The only person who might still have been covered under the CF policy was the sixth driver who did not have a separate policy and was paid $2,255 during 1999.

.See 2001 La. Acts, No. 1014, § 1.

. The other statute referenced was LSA-R.S. 23:1063(B), which was added by a later amendment, but has no direct bearing on the issues we are addressing. See 2001 La. Acts, No. 1014, § 1.

. This fact distinguishes this case from the cases cited to this court by LWCC, in which nothing was provided to the insurers to show that the independent contractor truck drivers could not expose LWCC and the principal contractor to additional workers’ compensation liability. Compare LWCC v. N/C Materials, Inc., 02-2127 (La.App. 1st Cir.6/27/03), 858 So.2d 534, writ denied, 03-2134 (La. 11/7/03), 857 So.2d 504; Fleniken v. Entergy Corp., 00-1824 (La.App. 1st Cir.2/16/01), 780 So.2d 1175, writs denied, 01-1268, 01-1305, 01-1317 (La.6/15/01), 793 So.2d 1250, 1253, and 1254.

. We pretermit discussion of CF’s remaining assignments of error.

. That audit also accepted the exclusion of Conrad Frey IV from coverage under the CF policy, and made no premium calculations based on any remuneration he might have received from the company.