McClendon, j.
| RA commercial trucking carrier appeals a judgment rendered by the Office of Workers’ Compensation (“OWC”) finding that a truck driver was its employee and requiring it to pay workers’ compensation benefits. For the reasons that follow, we reverse.
FACTS AND PROCEDURAL HISTORY
On May 9, 2012, Quintín Bridges was driving a tractor-trailer rig and traveling west on Interstate 610 at Elysian Fields Avenue in New Orleans when he was involved in an accident with a pickup truck. Mr. Bridges was injured in the accident.
On May 23, 2012, Mr. Bridges filed a Disputed Claim for Compensation with the OWC, alleging that New Orleans Trucking and Rental Depot, Inc. (New Orleans Trucking) and Varice A. James, Sr. were his employers. In his disputed claim, Mr. Bridges alleged that: (1) no wage benefits had been paid; (2) no medical treatment had been authorized; (3) the workers’ compensation rate was incorrect; (4) a procedure recommended by his doctor had not been authorized; and (5) he was denied his choice of a primary care physician. Mr. Bridges also made a request for penalties and attorneys’ fees.
In its answer, New Orleans Trucking alleged that it was not required to provide compensation benefits to Mr. Bridges under the Louisiana Workers’ Compensation Act (the Act) because Mr. Bridges was an independent contractor.
In April 2013, the OWC conducted a trial on the merits. Following trial, the OWC took the matter under advisement. Subsequently, the OWC rendered judgment in favor of Mr. Bridges, finding that Varice James was Mr. Bridges “lending employer” and New Orleans Trucking was Bridges’ “borrowing employer” such that New Orleans Trucking was required to provide workers’ compensation under the Act. The OWC ordered New Orleans Trucking to pay total temporary disability benefits and supplemental earnings benefits, all medical bills for treatment rendered by Dr. William Alden and Dr. F. Allen |,^Johnston, and all future reasonable *290 and necessary medical treatment related to the accident.
New Orleans Trucking[1] has appealed, assigning the following errors:
I. The OWC committed reversible error in finding that Bridges was not an independent contractor.
II. The OWC committed reversible error in finding that Bridges was entitled to temporary total disability benefits from the date of the accident to March 27, 2013 and entitled to supplemental earnings benefits at zero wage earning capacity from March 28, 2013 through the date of trial.
III. The OWC committed reversible error in finding that New Orleans Trucking refused to admit that it was liable for any workers compensation benefits, including medicals; therefore, the medical treatment guidelines did not apply to treatment rendered prior to the date of the judgment.
IV. The OWC committed reversible error in granting Bridges’ motion to compel MRI on January 17, 2013, then finding that New Orleans Trucking did not timely comply with the order to pay for an MRI and initial evaluation.
DISCUSSION
Employees in Louisiana are assured protection from work-related injuries through the Louisiana Workers’ Compensation Law, set forth in LSA-R.S. 23:1021 et seq. “A person rendering service for another in any trades, businesses or occupations covered by this Chapter is presumed to be an employee under this Chapter.” LSA-R.S. 23:1044. An alleged employer can rebut this presumption by either (i) establishing that the services were not pursuant to any trade, business, or occupation, or (ii) establishing that the individual was performing services but was doing so as an independent contractor. Hillman v. Comm-Care, Inc., 01-1140 (La.1/15/02), 805 So.2d 1157,1161.
An independent contractor is defined in LSA-R.S. 23:1021(7),[2] as amended by 2004 La. Acts 188, as follows:
“Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified |4result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter. (Emphasis added.)
The legislature has recognized that owner operators, and their drivers, are not employees of the common carrier if the owner operator and common earner enter into a written contract that identifies the owner operator as an independent contractor. Specifically, LSA-R.S. 23:1021(10),[3] as enacted by 2004 La. Acts. 488, provides:
*291 “Owner operator” means a person who provides trucking transportation services under written contract to a common carrier, contract carrier, or exempt haulers which transportation services include the lease of equipment or a driver to the common carrier, contract carrier, or exempt hauler. An owner operator, and the drivers provided by an owner operator, are not employees of any such common carrier or exempt hauler for the purposes of this Chapter if the owner operator has entered into a written agreement with the carrier or hauler that evidences a relationship in which the owner operator identifies itself as an independent contractor. For purposes of this Chapter, owner operator does not include an individual driver who purchases his equipment from the carrier or hauler, and then directly leases the equipment back to the carrier or hauler with the purchasing driver.
The parties do not dispute that Varice James entered into a written contract to lease its truck to New Orleans Trucking. The contract identifies Varice James as the owner/operator and as an independent contractor. The contract also specifically provides that Varice James “understand[s] that neither my driver(s) nor I am an employee of New Orleans Trucking and Rental Depot, Inc. My drivers will be my employees and, except insofar as otherwise required by law, will be under my exclusive control.” Moreover, Varice James agreed to be “solely responsible for carrying and providing [workers’] compensation insurance \ -non all drivers and other employees of Owner/Operator who are connected with or perform and service under this Agreement.” (Italics in original.)
New Orleans Trucking contends, by operation of LSA-R.S. 23:1021(10), that neither Varice James, as owner operator, nor Mr. Bridges, as the driver of the leased vehicle, were employees of New Orleans Trucking. Rather, New Orleans Trucking contends that Varice James, and his driver, were independent contractors as defined in LSA-R.S. 23:1021(7). Accordingly, New Orleans Trucking concludes that it did not and was not required to provide workers’ compensation coverage to Mr. Bridges.
In opposition, Mr. Bridges cites Zeringue v. O’Brien Transp., Inc., 05-760 (La.App. 5 Cir. 4/11/06), 931 So.2d 377, writ denied, 06-1107 (La.9/1/06), 936 So.2d 205, and asserts that despite the contractual language, courts must look beyond the contract to examine the circumstances of each case. Mr. Bridges notes that the use of lease agreements by common carrier is a common practice, as an attempt to immunize themselves by making their employees independent contractors, but such action does not necessarily shield employers from liability under the Act. Zeringue, 931 So.2d at 380. Mr. Bridges suggests that New Orleans Trucking was, in essence, his principal or statutory employer such that New Orleans Trucking was responsible for providing him workers’ compensation coverage. See LSA-R.S. 23:1061.[4]
*292 Un Hair v. Louisiana Crane & Trucking Co., 48,566 (La.App. 2 Cir. 9/17/08), 996 So.2d 485, a truck driver hauled goods for a carrier. The truck driver and carrier entered into a contract recognizing the driver as an independent contractor. The truck driver was subsequently injured and sought workers’ compensation benefits from the carrier. The appellate court, affirming that there was no employer-employee relationship, cited the following facts found by the trial court: 1) the contract defined the status of the parties and required the truck driver to provide his own workers’ compensation insurance; 2) the truck driver owned his truck, for which he paid fuel and all upkeep; 3) the truck driver secured his own commercial driver’s license, at his cost; 4) the carrier issued forms 1099, not W-2s, to the driver; 5) the carrier paid the driver a percentage for each load, in lieu of an hourly wage; and 6) the driver chose his own route and set his own hours and work traits. In concluding that the carrier did not provide compensation coverage, the court noted:
The result here is harsh, but the contract could not be much clearer. The facts of this case, as applied to the law and to the contract between the parties, inescapably [preponderate] towards affirming the ruling made by the trial court. Signatures to legal documents have significance and consequences, and we find that the relationship of the parties, as per contract, and as implemented |7on the ground, was that of a contract carrier that contracted with an independent contract truck driver.
Hair, 996 So.2d at 437. Accord Course v. Fox Wolff Constr., 08-58 (La.App. 5 Cir. 5/27/08), 987 So.2d 277, writ denied, OS-1396 (La.9/26/08), 992 So.2d 992.
Similarly, in this case, Varice James and New Orleans Trucking entered into a con *293 tract that met the requirements set forth in LSA-R.S. 23:1021(10). Also, Varice James and Mr. Bridges testified that Mr. Bridges’ only duties were to drive the rig, which pulled the trailers. Although New Orleans Trucking instructed when and where the trailers were to be delivered, Mr. Bridges determined his own route. Varice James was paid for the runs made by the rig, and Varice James, in turn, paid Mr. Bridges 30% of the gross receipts earned by the truck. Mr. Bridges maintained his own records of his weekly trips, and calculated the 30% of the trucks’ earnings, and was paid in accordance with those records. Varice James paid Mr. Bridges directly, and his annual earnings, for tax purposes, were reflected on an IRS form 1099. In light of the foregoing, we conclude that Varice James was an independent contractor.
Nevertheless, Mr. Bridges asserts that even independent contractors are covered employees if a substantial part of the work time is spent in manual labor carrying out the terms of the contract. LSA-R.S. 23:1021(7). At the hearing, Mr. Bridges testified, in addition to driving the rig, he fueled the rig, connected electrical lines and air hoses, and hooked and unhooked the trailers. Mr. Bridges sometimes also swept the empty containers. In reaching its decision that New Orleans Trucking was responsible for providing workers’ compensation coverage, the OWC reasoned:
Claimant [Mr. Bridges] performed the manual labor of hooking [and] unhooking the trailer, cleaning inside the trailer and moving the cargo inside the trailer as needed, all of which was done on behalf of N.O. Trucking, and within the course and scope of his employment with N.O. Trucking. Therefore, claimant is covered by the workers’ compensation act and defendant N.O. Trucking is the proper defendant to pay workers’ compensation benefits herein.
| ^However, in reaching this determination, the OWC failed to consider LSA-R.S. 23:1021(7), which specifically provides:
The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter. [Emphasis added.]
Therefore, the only manual labor provided by Mr. Bridges, and referenced by the OWC, was occasionally sweeping the empty trailers.[5] Sweeping of the trailers, however, was not a substantial part of Mr. Bridges’ work time. Therefore, we conclude that no employer-employee relationship existed between New Orleans Trucking and Mr. Bridges.[6]
CONCLUSION
In light of the foregoing, we reverse the OWC judgment signed on June 5, 2013. Costs of this appeal are assessed to appel-lee, Quintín N. Bridges.
REVERSED.
PETTIGREW, J., concurs.

.Varice James has also appealed, but we note that he was not cast in judgment.

. At the time of the amendment, the definition appeared in subsection 6 of the statute.

. At the time it was enacted, the definition *291 appeared in subsection 13 of the statute.

. Louisiana Revised Statutes 23:1061 provides:
A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal” as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor”, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of *292 the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal’s trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services.
(2) A statutory employer relationship shall- exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee’s immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor’s employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal’s goods, products, or services’.
B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

. We recognize that the OWC also found that Mr. Bridges sometimes moved cargo inside the trailer. However, the testimony only reflects one isolated incident that required Mr. Bridges to dispose of Styrofoam and empty boxes.

. In finding merit in assignment of error number one, we pretermit discussion of the remaining assignments of error. Moreover, we do not address whether workers’ compensation benefits may be owed by Varice James.