GARRETT, J.
The defendant, Will Transport, L.L.C., appeals from a trial court judgment which held that it owed almost $670,000 in unpaid premiums for long haul truck drivers under a workers' compensation insurance policy for the years 2004 to 2006. It maintains that the drivers were statutorily exempt from coverage and benefits under the Louisiana Workers' Compensation Act (hereinafter "LWCA"). Will Transport also appeals from the dismissal of its third-party demand against Lexington Insurance Company, its contingent liability insurer. The plaintiff, Louisiana Safety Association of Timbermen-Self Insurers Fund (hereinafter "LSAT"), appeals the trial court's dismissal of two other defendants which it contends were solidarily liable with Will Transport. For the reasons set forth below, we affirm in part and reverse in part the trial court judgment.
FACTS
This suit, which began with the filing of a simple one-and-a-half page petition, has *1197 spawned more than a decade of litigation, including numerous motions, two writ applications, and now two appeals. To understand the issues currently before us, which date back to events occurring years ago, some background information is necessary.
In 1996, Karl Pentecost started K.P. Trucking, L.L.C. (hereinafter "K.P."). This company owned 18-wheeler trucks which were leased to various freight haulers and employed drivers. In 2000, Pentecost created another entity, Will Transport, a contract hauler which secured shipping contracts and subcontracted cargo pick-up and delivery of the contracts to independent drivers. After Will Transport was created, K.P. provided trucks and drivers only to it. However, Will Transport also utilized drivers not affiliated with K.P. The cargo included roll stock paper, recycled paper, and lumber products from customers such as Georgia-Pacific and Graphic Packaging. Pentecost owned 95% of each of the two L.L.C.s, with the remaining 5% being owned by office manager Janet Hill. He was also the sole owner of Ouachita Truck & Trailer (hereinafter "Ouachita"), which performed repairs for a number of trucking companies, including K.P. All three business had the same street address, and the payroll for all three entities flowed through Will Transport. K.P.'s drivers were employees who received W-2 tax forms. Other drivers who provided services for Will Transport did so under a written contract which was labelled "Equipment Lease." These drivers received 1099 tax forms for the compensation they received, and they are the drivers at issue in this case.
In 2003, seeking a better rate for workers' compensation insurance, Pentecost submitted an application for membership with LSAT on behalf of Will Transport. He signed these documents as "manager LLC"; however, he attached member financial statements for both Will Transport and K.P. Additionally, a workers' compensation application was submitted to LSAT by the insurance agency used by Pentecost. The application was made on behalf of both Will Transport and Ouachita and signed by Pentecost. In a box specifying "additional coverages/endorsements," there was a notation to add K.P. as a named insured. The federal employer identification numbers ("FEIN") for each of these three entities were included on the application next to their names.
LSAT provided workers' compensation coverage for Pentecost's companies for the policy years 2004 to 2006. Its certificate of self-insurance provided as follows for the computation of the premiums:
C. REMUNERATION
Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:
1. all your officers and employees engaged in work covered by this policy; and
2. all other persons engaged in work that could make us liable under Part One (Workers' Compensation Insurance) of this certificate of coverage. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers' compensation obligations. [Emphasis added.][1]
*1198 In 2004, the Louisiana legislature passed a workers' compensation bill designed "to exempt 'owner operators' from being classified as employees." See Acts 2004, No. 188, § 1, which became effective on June 10, 2004. It amended the definition of "independent contractor" and added a definition of "owner operator" in La. R.S. 23:1021. Specifically, La. R.S. 23:1021(7) was amended to add the last sentence:
(7) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter. [Emphasis added.]
La. R.S. 23:1021(10) was enacted and states:
(10) "Owner operator" means a person who provides trucking transportation services under written contract to a common carrier, contract carrier, or exempt haulers which transportation services include the lease of equipment or a driver to the common carrier, contract carrier, or exempt hauler. An owner operator, and the drivers provided by an owner operator, are not employees of any such common carrier or exempt hauler for the purposes of this Chapter if the owner operator has entered into a written agreement with the carrier or hauler that evidences a relationship in which the owner operator identifies itself as an independent contractor. For purposes of this Chapter, owner operator does not include an individual driver who purchases his equipment from the carrier or hauler, and then directly leases the equipment back to the carrier or hauler with the purchasing driver.
Before the law changed, Pentecost did not exclude any of his contract drivers from his workers' compensation policy. He collected payment for the coverage from the drivers and remitted it to the insurer on their behalf. He exempted them from this reimbursement procedure if they had their own workers' compensation policy. According to Pentecost, the owner operators wanted to be exempt to reduce their costs. If Pentecost allowed them to be exempt, it was a competitive advantage in *1199 recruiting for him against other trucking companies. Because of legal uncertainty arising from the 2004 changes in the law, which was viewed as a "gray area," Pentecost sought a solution from his insurance agent in order to protect against suits and claims by the contract drivers. He was presented with a package of an AIG occupational accident policy combined with a Lexington contingent liability policy.
The proposal designed for Will Transport stated, in relevant part:
[In the Truckers Occupational Accident Insurance portion]
THIS [sic] NOT WORKERS' COMPENSATION INSURANCE OR SICKNESS COVERAGE.
[In the Contingent Liability Insurance portion]
The Contingent Liability Program is a policy which is purchased by the motor carrier to help fill the gray area that exists between owner-operator drivers and employee drivers. It does pay benefits which may be equivalent to those that would be payable in accordance with workers' compensation law.
Contingent Liability responds only in the event that an owner-operator is deemed, or is seeking to be deemed, an employee of a motor carrier by a workers' compensation board, bureau or court.
The Contingent Liability Program is available in all states except Delaware and requires an AIG Occupational Accident Program with at least $500,000 Combined Single Limit coverage. The Contingent Liability Program cannot be written as a stand-alone product[.] [Emphasis theirs.]
The AIG and Lexington policies were issued to Will Transport, effective July 1, 2004. The AIG policy contained a notation, again stating that its coverage was not workers' compensation coverage and not a substitute for such coverage. The declarations page of the Lexington policy, which was a companion policy to the AIG occupational accident policy, stated it was "a surplus line coverage." The policy itself stated in relevant part:
SECTION I-INSURING AGREEMENT
Insuring Agreement. Upon the occurrence of a Covered Contingency, we will, at our sole option and in accordance with applicable law, either:
1. Pay benefits that are equivalent to the benefits payable under the workers' compensation and employers' liability law that would apply to the Named Insured if this Policy was a policy of workers' compensation insurance, but only with respect to an Owner-Operator or Contract Driver who is deemed in accordance with applicable law to be an employee of the Named Insured by order of any administrative or regulatory agency or court of competent jurisdiction; or
2. Pay benefits that are equivalent to the benefits payable under the workers' compensation and employer's liability law that would apply to the Named Insured if this Policy was a policy of workers' compensation insurance, but only with respect to the Owner-Operator or Contract Driver who is seeking to be deemed an employee of the Named Insured in accordance with applicable law.
This Policy provides for our right and duty to defend the Named Insured with respect to those benefits required under the workers' compensation laws of such states, or such other states as may be determined to apply to the Owner-Operator, and/or Contract Driver.
...
Covered Contingency means a contingency which occurs when the Named Insured receives written notice of a Claim for Injury by an Owner-Operator *1200 or Contract Driver seeking workers' compensation or employer's liability benefits within the meaning of the applicable workers' compensation law.
Covered Contract means a long-term lease as defined by applicable state statute, regulation or otherwise. To be a Covered Contract such lease must satisfy all of the following requirements:
...
2. The contract must specify that the Owner-Operator's or Contract Driver's relationship with the Named Insured is that of an independent contractor who is at risk for profit or loss of his or her own individual business, and not that of an employee.
...
Owner-Operator means a person who:
...
3. has entered into a Covered Contract with the Named Insured for lease of his or her owned vehicle, provided that such Covered Contract must be in effect when a Covered Contingency occurs[.]
...
SECTION III-EXCLUSIONS
This Policy shall not apply to, and no coverage shall be provided under this Policy for, any Claim:
...
6. brought by an individual who meets any applicable statutory or regulatory definition of an independent contractor[.]
As explained in the trial testimony of Lexington's representative, Alberto Fajardo, Will Transport was the policyholder for the occupational accident policy; the insureds under that policy were the owner operators. In his Will Transport corporate deposition, which was admitted at trial, Pentecost said the drivers paid for the occupational accident policy themselves, with him deducting it on their settlement sheets. Will Transport was the insured under the contingent liability policy. Fajardo testified that, as specified in the proposal, Will Transport, the motor carrier which purchased the policy, was to pay the premium, which was calculated per owner operator per month.
Pursuant to LSAT's standard procedures, audits were performed at the end of policy years to verify the correctness of the premiums assessed. The auditor obtained payroll information from the insured and calculated the premiums. Any independent trucker who had a certificate of insurance verifying that he had his own workers' compensation policy listing him as the insured was excluded from the payroll calculations. Conflict arose between LSAT and Pentecost as to whether the owner operators and independent contractors utilized by Will Transport should be exempt from the workers' compensation premium calculations. Will Transport argued that they were exempt due to the 2004 changes in Louisiana law. LSAT contended that, under its policy language, these drivers were "persons engaged in work that could make us liable under Part One (Workers' Compensation Insurance) of this certificate of coverage." Consequently, it maintained that it had provided workers' compensation coverage for them and was entitled to premiums for that coverage. In November 2006, LSAT issued a notice cancelling the policy on the grounds of "failure to report 1099 labor."
In January 2007, LSAT filed suit against Will Transport, asserting that it had failed to pay all of the premiums and assessments due for the fund years of 2004 and 2005.[2] It sought $212,341.14, plus judicial *1201 interest and all costs of the proceedings. In its first supplemental and amending petition, which was filed in December 2009, LSAT added the 2006 policy year and increased the sum owed to $435,530.04. In its second supplemental and amending petition, which was filed in January 2013, LSAT alleged that the amount owed was $748,930.44.
In its answers, Will Transport asserted that it had paid all the charges and premiums owed under the policy for 2004 to 2006, excluding the activities of long distance truck drivers who contracted to deliver by truck specific loads of goods to a specific destination for a specified compensation. Will Transport alleged that these drivers were "independent contractors" and/or "owner-operators" statutorily excluded from coverage of the workers' compensation law pursuant to La. R.S. 23:1021(7) and (10). Alternatively, Will Transport claimed that, if workers' compensation exposure or benefits were owed by it based upon the activities and services provided by the long distance truck drivers, they were fully covered under the contingent workers' liability insurance coverage from Lexington Insurance Company.
On May 24, 2013, Will Transport offered to settle for $10,000. The letter sent by counsel claimed that Will Transport had not operated for more than two years and had no assets. Thereafter, on May 30, 2013, LSAT filed a third supplemental and amending petition, in which it added two new defendants: K.P. and Pentecost d/b/a/ Ouachita. It asserted that all of the defendants were liable in solido. A motion for summary judgment filed by K. P. and Pentecost d/b/a Ouachita was granted, and they were dismissed with prejudice. However, finding the existence of genuine issues of material fact, this court reversed the summary judgment and remanded the case for further proceedings. Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Will Transp., L.L.C. , 49,740 (La. App. 2 Cir. 4/15/15), 164 So.3d 945.
Following remand, Will Transport filed a third-party petition against Lexington, alleging that its contingent liability policy was represented as providing coverage for independent contractors and independent truck operators should it be determined they were entitled to workers' compensation. Will Transport asserted that, pursuant to this policy, Lexington owed it a duty to defend. Consequently, it sought a declaratory judgment that the contingent policy provided coverage or, alternatively, that Lexington was liable to it for any insurance premiums it was found to owe. It also requested costs for defending the action, including attorney fees. Lexington responded with an answer pleading the policy as the best evidence of its contents, as well as exceptions of lack of subject matter jurisdiction, prematurity and no cause of action. All of the exceptions were subsequently denied, and this court denied Lexington's subsequent writ application. Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Will Transp., L.L.C. , 51,294 (La. App. 2 Cir. 9/29/16).
In August 2016, Will Transport filed a motion for partial summary judgment ("MPSJ") as to truck drivers who were "insureds" under the Lexington policy.[3] In *1202 September 2016, Will Transport also filed exceptions of no right of action and no cause of action pursuant to the statutory exceptions for independent contractors and owner operators. At a hearing on September 6, 2016, the MPSJ was denied, and the exceptions were taken under advisement and referred to the merits at the trial. The court also denied Will Transport's motion to continue the trial, which was scheduled for October 3, 2016. It further excluded evidence pertaining to the workers' compensation statutory exclusion, but granted Will Transport's discovery motions against Lexington. Writs were taken to this court. We granted the writ in part to reverse the exclusion of evidence pertaining to the statutory exclusion. As to the remaining issues, including the refusal to continue the trial, the writ was denied. Louisiana Safety Ass'n of Timbermen-Self Insurers Fund v. Will Transp., L.L.C. , 51,299 (La. App. 2 Cir. 9/29/16).
A bench trial was finally held on October 3 and 4, 2016. Testimony was given by Pentecost; Alberto Fajardo, a vice-president of underwriting for AIG/Lexington and Lexington's trial representative; and Nan Harrel, a LSAT underwriting manager who was working for the bankruptcy trustee. The deposition of Gordon McDaniel, an LSAT auditor, and the corporate deposition for Will Transport were admitted into evidence. Voluminous exhibits were introduced. A motion for involuntary dismissal on behalf of K.P., Ouachita, and Pentecost individually was granted after LSAT presented its case. At the trial's conclusion, the matter was taken under advisement.
On January 18, 2017, the trial court issued written reasons for judgment. It found that Ouachita and K.P. were additional insureds under the policy but were not responsible for payment of the premiums. It held that Will Transport was the only named insured, as well as the party which was billed and paid all premiums and paid all payroll. Therefore, it was the only party responsible for payment of the premiums to the plaintiff. The court found no legal basis for placing liability for the premiums on K.P., Ouachita, or Pentecost individually.
The trial court further held that the contract between LSAT and Will Transport controlled whether or not there was an obligation to pay a premium. The contract provided that a premium was due for all persons engaged in work that "could make" LSAT liable for workers' compensation. The court reasoned that potential exposure to liability or risk of liability-not actual claims-triggered the obligation to pay the premiums and the fact that a particular risk did not materialize was not a defense to payment of the premium. The court concluded that it was not relevant to the inquiry whether the individual drivers were actually "independent contractors" or "owner-operators."
According to the trial court, only a workers' compensation insurance policy issued to the subcontractors in question would relieve Will Transport of liability for the premium. It specifically held that the AIG and Lexington policies did not satisfy the requirements of the contract between LSAT and Will Transport. The court held that when the policy was originally taken out, it was understood that all "independent contractors" or "owner-operators" were to secure their own workers' compensation or a premium would be due. The court assessed premiums in the following amount against Will Transport: $153,495.00 for 2004; $298,791.54 for 2005; and $217,273.90 for 2006.
*1203 Lastly, the trial court found no basis for liability against Lexington. It found that Lexington's policy was not a workers' compensation policy, and did not cover or insure the payment of the premiums at issue. Finding no duty to defend, the court dismissed all claims against Lexington. Judgment was signed on March 1, 2017.
Will Transport appealed the imposition of premiums against it and the dismissal of its third-party demand against Lexington. LSAT also appealed the involuntary dismissal of K.P. and Pentecost d/b/a Ouachita.
PREMIUMS OWED UNDER POLICY
In three assignments of error, Will Transport argues that the trial court erred in finding that it owed LSAT unpaid premiums for the years 2004 to 2006. It asserts that it paid all the premiums it owed for those years, with the exception of "independent, long haul, owner operator truck drivers" who were exempt from coverage under the 2004 changes in the LWCA. Will Transport further claims that it complied with the LSAT policy by purchasing coverage from Lexington.
Will Transport contends that it offered the LSAT auditor proof (written contracts and settlement statements) which established that its long haul drivers fell into the "independent contractor" and "owner operator" statutory exclusions, but he refused to accept or consider the information. LSAT maintains that its auditor properly conducted the audits in compliance with the applicable guidelines found in the National Council on Compensation Insurance ("NCCI") manual.
Will Transport points to the jurisprudence that has developed after the 2004 changes to the workers' compensation law, wherein courts have applied the statutory exceptions in workers' compensation cases to exclude coverage to truck drivers deemed independent contractors. In particular, they cite Bridges v. New Orleans Trucking & Rental Depot, Inc. , 2013-1969 (La. App. 1 Cir. 6/27/14), 146 So.3d 288 ; Grant v. Sneed , 49,511 (La. App. 2 Cir. 11/19/14), 155 So.3d 61 ; Council v. FedEx Custom Critical, Inc. , 46,558 (La. App. 2 Cir. 9/21/11), 73 So.3d 461, writ denied , 2011-2332 (La. 12/2/11), 76 So.3d 1178 ; Hair v. Louisiana Crane & Trucking Co. , 43,566 (La. App. 2 Cir. 9/17/08), 996 So.2d 435 ; Course v. Fox Wolff Const. , 08-58 (La. App. 5 Cir. 5/27/08), 987 So.2d 277, writ denied , 2008-1396 (La. 9/26/08), 992 So.2d 992. Will Transport maintains that, because courts have enforced the statutory exclusions, the applicability and effectiveness of the exclusions is "unquestionable" at this time. As a result, it argues that the trial court erred in not applying the same principle to the instant case to exclude the premiums for these statutorily excluded drivers. It criticizes the trial court for reasoning that the statutory exclusions were irrelevant and instead focusing only on the language of the LSAT insurance contract.
In order to address Will Transport's complaints about the trial court's alleged failure to consider all the evidence and all the applicable law, we have conducted an exhaustive review of everything deemed pertinent by Will Transport. As more fully explained below, we agree with the trial court's ultimate conclusion that Will Transport was responsible for the unpaid premiums. Our conclusion that the ruling was correct is based upon our complete review and analysis of all of the evidence presented below, even though some of it may not have been considered by the trial court. Our conclusion is also based upon our analysis of the evidence in this record in light of the 2004 changes to the workers' compensation law.
As mentioned above, Will Transport has cited numerous cases where the courts *1204 have considered the 2004 changes to the workers' compensation law. Most of the cases involve independent drivers seeking coverage under the LWCA. One case, which will be discussed more fully below, involved a tort claim. These cases do not address the precise issues before us pertaining to insurance premiums. They involve situations that have arisen after someone has been injured and filed a claim. Suffice it to say, they are all fact intensive and the outcome is dependent upon the unique factual circumstances presented in each case.[4]
The present litigation-a suit for unpaid premiums under an insurance contract-dictates that we should consider the provisions of the various insuring agreements, the LWCA, and the contracts relied upon by Pentecost. We must also review whether Will Transport produced evidence proving compliance with the law and the LSAT insurance contract.
We note that the distinction between an employee and an independent contractor is a factual determination that must be decided on a case-by-case basis. Smith v. Moreau , 2017-0003 (La. App. 1 Cir. 6/2/17), 222 So.3d 761. An employer asserting that a claimant is an independent contractor is required to bear the burden of proving this status. Smith v. Prime, Inc. , 2009-269 (La. App. 3 Cir. 10/7/09), 20 So.3d 1184. We recognize that these cases ordinarily arise when claims are made, but they teach us that whether someone is an employee or an independent contractor is dependent upon the facts and circumstances peculiar to each case.
In order to fall under the definition of "owner operator" in La. R.S. 23:1021(10), there must be a "written agreement" which "evidences a relationship in which the owner operator identifies itself as an independent contractor." Pentecost testified that initially his written contracts with owner operators had to be renewed every year; at some point, they made them continuous until cancelled. After the changes in the law in 2004, he began inserting the phrase "(an independent contractor)" next to the driver's name in his written contracts with these drivers; no other changes to the contracts were made. Thirty-nine such contracts, which were entitled "Equipment Lease," were admitted at trial.[5] We have conducted a thorough review of these documents. It appears from the testimony that Pentecost obtained a lease agreement form from another company and used this as a template. The documents are less than clear. Only four of them contained the "(an independent contractor)" language.[6] However, 23 of the contracts dated after the changes went into effect on June 10, 2004, did not have the additional language. The remaining 12 contracts were dated prior to the effective date and did not contain the "independent *1205 contractor" language. The contract required the driver, or lessor, to maintain public liability insurance for bodily injury, property damage liability insurance and cargo damage liability insurance, which Will Transport, the lessee, would obtain and place. The lessor would then reimburse the lessee for that insurance at a fixed weekly rate. Significantly, the contracts contained no mention whatsoever of workers' compensation insurance or responsibility for workers' compensation claims.
In support of its contentions that the contract drivers were exempt, Will Transport relies upon Grant v. Sneed , supra , which was decided by this court in 2014. That case stemmed from an accident that occurred in 2008 at the Weyerhaeuser lumbermill. Grant was a driver working for V & M Trucking, which had an equipment lease contract with Will Transport. This document was apparently one of the four contracts mentioned above, in which the phrase "(an independent contractor)" had been added after the contract driver's name. V & M had workers' compensation insurance coverage with LSAT which paid workers' compensation benefits to Grant. In response to the tort suit filed by Grant, Weyerhaeuser claimed to be a "statutory employer" of Grant in order to shield itself from tort liability. The contract between Will Transport and Weyerhaeuser specifically provided that the persons operating vehicles were not to be considered as employees of Weyerhaeuser and the obligation for providing workers' compensation insurance was on the carrier. In analyzing whether Weyerhaeuser could invoke the "statutory employer" statute under the LWCA, we noted in the opinion that the independent contractor relationship between Will Transport and V & M came under La. R.S. 23:1021(10). We held that Weyerhaeuser was not entitled to tort immunity. Any issues pertaining to who was responsible for workers' compensation benefits to Grant were not before us. This tort case does not stand for the broad proposition advanced by Will Transport that this court has universally approved the statutory adequacy of Will Transport's contract for any and all purposes.
Only a handful of the written contracts offered by Will Transport to LSAT's auditor include the "independent contractor" language required under La. R.S. 23:1021(10). Although Pentecost claimed there were settlement sheets available to the auditor, he admitted that he could not recall ever offering them to the auditor. Additionally, the information found on those documents did not establish whether the drivers were owner operators under La. R.S. 23:1021(10). Simply put, neither Grant v. Sneed , supra , nor the documents in this record support Will Transport's position that all the drivers were automatically exempt under the workers' compensation statutes.
Will Transport also argues that the trial court erred in not finding that the Lexington policy satisfied the LSAT policy provision which allowed it to avoid paying premiums if proof was supplied that "the employers of these persons [engaged in work that could make us liable] lawfully secured their workers' compensation obligations." LSAT maintains that the Lexington policy was a contingent liability policy issued to Will Transport which did nothing to reduce LSAT's liability. We agree and find the trial court's interpretation of this provision requiring that the owner operators have their own workers' compensation policies with the drivers as insureds was reasonable. Review of the Lexington policy reveals that its scope of coverage was, at best, questionable. Among other things, it required that the "Covered Contract" between Will Transport and owner operators specify that the relationship of the owner *1206 operator with the named insured was that of independent contractor. As already discussed, the overwhelming majority of Will Transport's contracts were deficient in this regard.
Will Transport further argues before us that no claims were made under the LSAT policy. However, assertions that none of the truck drivers ever filed a claim for workers' compensation coverage are irrelevant. The premiums cover potential exposure to liability, not actual claims. Louisiana Workers' Comp. Corp. v. N/C Materials, Inc. , supra .
Based on the foregoing, we cannot find that the proof presented at trial established that LSAT was apprised that it had no exposure for workers' compensation to Will Transport's drivers. Louisiana Workers' Comp. Corp. v. Frey , supra . Will Transport failed to carry its burden of proving exemption from payment of unpaid premiums by means of written contracts which showed La. R.S. 23:1021(10) compliance and were offered to LSAT's auditor or by providing proof of appropriate workers' compensation coverage as required by the contract language. Consequently, the trial court did not err in its ruling that Will Transport was liable for the unpaid premiums under the policy.
DISMISSAL OF CODEFENDANTS
LSAT appeals from the trial court's dismissal of K.P. and Pentecost d/b/a Ouachita as codefendants. It argues that that trial court erred in its reasoning that they were not named insureds and thus were not responsible for premiums. LSAT asserts that they were liable in solido with Will Transport for all unpaid premiums owed under the policy. We agree. As explained below, the trial court failed to consider all of the documentary evidence and was manifestly erroneous.
Signatures are not mere ornaments. Tweedel v. Brasseaux , 433 So.2d 133 (La. 1983) ; JPS Equip., LLC v. Cooper , 50,506 (La. App. 2 Cir. 2/24/16), 188 So.3d 1106. A person who signs a written agreement is presumed to know its contents and cannot avoid its obligations by claiming that he did not read it, that he did not understand it, or that it was not explained. Greely v. OAG Properties, LLC , 44,240 (La. App. 2 Cir. 5/13/09), 12 So.3d 490, writ denied , 2009-1282 (La. 9/25/09), 18 So.3d 77. Whoever signs or executes an instrument bearing blanks and later contests the correctness of the completion of the blanks, bears the burden of proving by a preponderance of the evidence that the document was completed in a manner not agreed to between the parties. Masonite Corp. v. Serv. Door & Millwork, LLC , 2014-1035 (La. App. 3 Cir. 4/1/15), 162 So.3d 702, writ denied , 2015-0860 (La. 6/5/15), 171 So.3d 951.
A finding of a solidary obligation requires a clear expression of the parties' intent and is not presumed. La. C.C. art. 1796 ; Louisiana Safety Ass'n of Timbermen Self Insurers Fund v. Courtney Const. Co. of Alexandria , 41,564 (La. App. 2 Cir. 12/13/06), 949 So.2d 490, writ denied , 2007-0443 (La. 4/27/07), 955 So.2d 687.
The evidence presented at trial demonstrated that an application for insurance was submitted to LSAT with Will Transport and Ouachita listed as applicants and a notation to add K.P. as a named insured. Pentecost admitted his signature on the application, but insisted that he only wanted K.P. and Ouachita to be additional insureds. However, he stated that he could not testify whether the application was filled in or not when he signed it because he had signed blank forms for insurance agents to fill in later on several occasions. Nonetheless, he conceded that he answered all questions asked by his insurance agent.
*1207 A letter from Pentecost's insurance agent dated June 9, 2003, requested that LSAT bind workers' compensation and employers liability coverage for "Will Transport, LLC, Ouachita Truck & Trailer, K.P. Trucking." The information page for the subsequently issued policy listed Will Transport as the insured, followed by a mailing address. Under the next section, which is "[o]ther workplaces not shown above," there is a notation to "See Schedule of Operations." The attached "Schedule of Operations" listed all three entities-Will Transport, K.P., and Ouachita-and their FEINs with each having the same street address. According to the trial testimony of Harrel, LSAT's representative, only Will Transport was listed as the insured on the first page due to lack of space; as a result, "See Schedule of Operations" was added to list the others on the following page. Thus, the information page of the policy comported with the coverage requested by Pentecost's agent.
Despite Pentecost's self-serving trial testimony to the contrary, the documentation produced and admitted at trial showed that Pentecost requested that LSAT provide coverage to all three of his businesses without specifying that any of them should be merely additional insureds. In fact, the workers' compensation application-which he signed-listed both Will Transport and Ouachita as applicants and included a notation to add K.P. as a "named insured." While the LSAT membership application listed only "Will Transport, LLC" as the business name of the applying entity and Pentecost signed as "manager, LLC," Pentecost completed the "member financial statement" portion of the application by attaching balance sheets for both "Will Transport, LLC" and "KP Trucking, LLC." In view of these facts, Pentecost's equivocal testimony about the circumstances under which he signed the insurance procuring documents failed to prove by a preponderance of the evidence that they were actually filled out by his insurance agent contrary to his instructions.
We find that the trial court was manifestly erroneous in its factual finding that Will Transport was the only named insured. All of the documentary evidence presented at trial-which the trial court never addressed and apparently failed to properly consider-established that the three entities are all named insureds and a single policy was issued to cover all of them. All three businesses were at the same location, and all of the payroll was handled by Will Transport. Under all of these circumstances, they are bound solidarily. See Louisiana Safety Ass'n of Timbermen Self Insurers Fund v. Courtney Const. Co. of Alexandria , supra , a factually similar case in which the appellate court found that, while the intent to be solidarily bound was not stated in the words of the insurance contract, the defendants' actions-entering the agreement together, paying the premiums jointly and corresponding with the insurer as a single entity-were a clear expression of an intent to be jointly responsible for the premiums. The same is true here. Accordingly, we reverse the trial court's granting of the involuntary dismissal.
LIABILITY OF LEXINGTON
In two assignments of error, Will Transport argues that the trial court erred in dismissing its third-party demand against Lexington. It maintains that Lexington's contingent liability policy provided workers' compensation coverage to Will Transport's independent drivers and somehow "shifted" the payment of the contested LSAT premiums to Lexington, warranting an award of monetary damages in its favor. Will Transport further asserts that the contingent liability policy imposed upon Lexington a duty to defend on its behalf and seeks the defense costs incurred in this matter.
*1208 Will Transport argues that the proposal represented that the Lexington policy provided workers' compensation benefits and that Lexington should have to pay, as contractual damages, its unpaid premiums under the LSAT contract because its coverage was not deemed to fulfill the LSAT contract requirements. However, nothing in the record suggests that the Lexington proposal or policy warranted in any fashion that it would satisfy those provisions. The proposal itself provided that "[t]he Contingent Liability Program is a policy which is purchased by the motor carrier to help fill the gray area that exists between owner-operator drivers and employee drivers. It does pay benefits which may be equivalent to those that would be payable in accordance with workers' compensation law." [Emphasis added.] This equivocal language fails to rise to the degree of "proof that the employers of these persons lawfully secured their workers' compensation obligations."
Review of the Lexington policy reveals that it is a contingent liability policy, not a workers' compensation policy. The covered contingency, the occurrence of which would have activated Lexington's coverage-receipt of a "written notice of a Claim for Injury by an Owner-Operator or Contract Driver seeking workers' compensation or employer's liability benefits within the meaning of the applicable workers' compensation law"-did not happen here. Nothing in the policy required Lexington to pay the premiums owed by Will Transport under the LSAT policy. Furthermore, because there was no triggering covered contingency, we find that the policy language does not impose upon Lexington a duty to defend under the circumstances of the instant case. Thus, Will Transport is not entitled to any defense costs.
Accordingly, the portion of the trial court judgment dismissing Will Transport's third-party action against Lexington is affirmed.
CONCLUSION
We affirm the portions of the trial court judgment ordering Will Transport, L.L.C., to pay the disputed premiums to Louisiana Safety Association of Timbermen-Self Insurers Fund and dismissing Will Transport's third-party demand against Lexington Insurance Company.
We reverse the portion of the trial court judgment dismissing K.P. Trucking, L.L.C., and Karl Pentecost d/b/a Ouachita Truck & Trailer as codefendants and hold that they are solidarily liable with Will Transport, L.L.C., for the premiums.
Costs of this appeal are assessed against Will Transport, L.L.C., K.P. Trucking, L.L.C., and Karl Pentecost, d/b/a Ouachita Truck & Trailer.
AFFIRMED IN PART, REVERSED IN PART.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GARRETT, STONE and MCCALLUM, JJ.
Rehearing denied.

The only cases construing this policy language arose before the 2004 amendment to La. R.S. 23:1021. See Highlands Underwriters Ins. Co. v. Foley , 96-1018 (La. App. 1 Cir. 3/27/97), 691 So.2d 1336 (because policy provisions were ambiguous regarding automatic inclusion of sole proprietors and additional premiums, no additional premiums allowed); Louisiana Workers' Comp. Corp. v. N/C Materials, Inc. , 2002-2127 (La. App. 1 Cir. 6/27/03), 858 So.2d 534, writ denied , 2003-2134 (La. 11/7/03), 857 So.2d 504 (pursuant to policy and endorsement, additional premiums allowed when insured failed to provide valid certificates of workers' compensation insurance as proof the drivers did not expose insurer and insured to additional liability); and Louisiana Workers' Comp. Corp. v. Frey , 2004-2517 (La. App. 1 Cir. 3/29/06), 934 So.2d 107, writ denied , 2006-1004 (La. 6/23/06), 930 So.2d 980 (no additional premiums allowed where the sole proprietor truck drivers signed notarized statements to opt out of workers' compensation and had individual workers' compensation policies with endorsements excluding themselves from coverage; documentation apprised plaintiff insurer that it would have no exposure for workers' compensation to those drivers).

At some point in the proceedings, LSAT filed for bankruptcy. Pursuant to LSAT's ex parte motion, the trial court substituted its trustee, Brett Brunson, as plaintiff in September 2016.

This was its third motion for partial summary judgment. The previous ones, which are not in the appellate record but were included in the opposition to the writ application in # 51,299-CW, were also denied. In its April 5, 2013 reasons for judgment, the trial court stated that, "absent production of proof that the defendant secured or made the drivers secure workers compensation insurance to cover their work, the defendant would be liable for premiums based on the payroll records or contract price for the services of the drivers as the case may be." The trial court stated that it did not believe that the occupational accident policy or the contingent liability policy secured the workers' compensation obligations of the drivers retained by the defendant who were engaged in work that could have made the insurance company liable. It maintained this position throughout the proceedings.

The developing jurisprudence is not as clear cut as argued by Will Transport. See for example McGrew v. Quality Carriers, Inc. , 2011-440 (La. App. 3 Cir. 10/5/11), 74 So.3d 1253, in which a summary judgment in favor of a carrier service was reversed because a genuine issue of material fact existed as to the amount of manual labor being performed by the driver.

These documents were exhibits to Pentecost's corporate deposition on behalf of Will Transport. The corporate deposition and its exhibits were offered by LSAT and admitted over the objections of Will Transport. (While Lexington objected to the admission of the corporate deposition on hearsay grounds, it later sought to introduce the already admitted owner operator contracts.) Pentecost testified that these were all of the contracts with drivers he could locate at that time and he could not find about a dozen more of them. At trial, Pentecost testified that he offered the written contracts to the auditor, who did not want to see them.

Interestingly, one of these was dated in February 2004, before the law changed.